KIRTLEY ET AL. V. MARSHALL SILVER MINING CO. ET AL.

The court is not bound by the special findings of a jury in a suit in equity, under the present practice, any more than when the court under the old practice sat as a chancellor, and such special findings were regarded as advisory merely, and might be wholly disregarded by the judge in his discretion.

*Appeal from District Court of Clear Creek County.*

THE facts are sufficiently stated in the opinion.

Mr. L. C. ROCKWELL and Mr. WILLARD TELLER, for appellants.

Mr. R. S. MORRISON and Messrs. WELLS, MACON and McNEAL, for appellees.

STONE, J.    This case was originally begun as an action at law, or as a' proceeding to adverse an application for patent to certain mining ground, but afterward in the history of the case, which is somewhat complex, the appellants, by leave of court, filed what they called an additional complaint for equitable relief, but which, so far as the case presented here for review is concerned, may be regarded as an original bill or complaint in equity. On the trial below, certain questions of fact were submitted to the jury for special findings upon the evidence, and the findings thereon returned by the jury were favorable to the appellants, who were plaintiffs below; but the court, upon motion of the appellees, entered judgment or decree dismissing the bill, notwithstanding the verdict or findings of the jury.

From this judgment the plaintiffs appealed, and the errors assigned go only to the correctness of this judgment. Hence, the questions for our consideration arise upon the whole evidence in the case. Is the evidence sufficient to support the complaint, and warrant a decree as prayed therein; or was it insufficient, and the court,

therefore, warranted in dismissing the complaint and rendering judgment accordingly, notwithstanding the findings of the jury?

The complaint averred that the Marshall Silver Mining Company, one of the defendants, theretofore applied for patent to tunnel lode No. 10, which application was adversed by plaintiffs' grantors, claiming the Steamboat lode, which was alleged to be included within the boundaries of said lode No. 10, as sought to be patented; that afterwards, pending the controversy, the matter was settled or compromised by an agreement that the Steamboat parties should withdraw their adverse on condition that the Marshall Company, after obtaining patent to the No. 10 lode, should convey to the other parties so much of the Steamboat lode as should be found to be included within the ground so patented; that in pursuance of such agreement, the said adverse was withdrawn, the patent issued accordingly, and that thereafter the said patentee company refused to convey; that the agreement was in writing, executed by one Moore for himself, and as the authorized agent of Crofsy and Palmer, other parties in interest with him, and by the Marshall Company through its president, Frank J. Marshall; that said written agreement became lost or mislaid, so that plaintiffs were unable to produce it; that the Marshall Company afterwards sold and conveyed the said lode No. 10 to the Colorado Central Consolidated Mining Company, the other defendants. That at the time of the purchase by the latter company, plaintiffs and their said grantors, Moore, Hurd, Crofsy and Palmer, were in possession of the Steamboat-ground claimed by them, and were working the property all the time, of which possession the Central Company had notice, and plaintiffs pray that said latter company be decreed to convey to plaintiffs the ground so as aforesaid agreed to be conveyed.

The separate answers of defendants admitted the application for patent, the filing of the adverse and its sub-

sequent withdrawal, the issue of the patent, and the subsequent sale by the Marshall Company to the Central Company, but denied the making of any agreement as set out in the complaint, and denied notice of possession by the Steamboat parties of any ground within the No. 10 claim, etc.

Plaintiffs replied to the answers, and upon the issues raised by these pleas the trial was had. The testimony is voluminous, consisting partly of depositions and partly of testimony of witnesses produced at the hearing; and, as usual in such cases, the testimony is conflicting upon the main points in controversy. We cannot be expected to set out even the substance of this entire testimony, which covers over one hundred pages of the printed abstract, nor to review the same at any length, and a brief reference thereto must suffice.

The facts about which there is no controversy are, that in November, 1875, the Marshall Company applied for patent to the No. 10 lode; that the grantors of appellants, Moore, Hurd, Crofsy and Palmer, filed an adverse and commenced a suit in December of the same year; that this suit arrested the entry by the Marshall Company of the No. 10 for about fifteen months, or from December, 1875, to March, 1877; that a compromise of some kind was made of the dispute on or before March 17, 1877; that on that day the Marshall Company, by F. J. Marshall, its president, made a deed to Moore of a portion of the patented No. 10 ground, conveying two hundred and fifty feet in length of what was known as the Steamboat lode; that on the same day the adverse suit was dismissed, and the entry of No. 10 made soon after; that the Marshall Company sold the No. 10 to the Colorado Central Company in 1879.

The matters of fact controverted are, that before the dismissal of the adverse suit, the appellants' grantors, Moore, Hurd, Crofsy and Palmer, made an agreement with the Marshall Company to the effect that in con-

sideration of such dismissal the Marshall Company would enter the No. 10, and convey to said parties all of the Steamboat lode found by future developments to be inside the boundaries of No. 10, west of the Broadway tunnel; that said agreement was put in writing, signed by F. J. Marshall for the company and by Moore for himself, Crofsy and Palmer, and by Hurd for himself; that the adverse parties dismissed their suit, and the Marshall Company entered their claim in pursuance of this agreement; that said agreement was made on or about the 17th day of March, 1877; that the action of Marshall in making this agreement was authorized by the Marshall Company, and that from that time until the conveyance of the No. 10 to the Central Company, the appellants and their grantors were in the actual, open, exclusive and notorious possession of the Steamboat lode as claimed and described in their bill of complaint.

The case of appellants depends upon these controverted propositions of fact and upon a corresponding proposition of law, that such possession as appellants and their grantors had of the Steamboat lode, as shown by the testimony, was notice to the world of their rights as claimed in this suit. Appellants claim as their rights one thousand four hundred and twenty-eight feet of the Steamboat lode as included in the No. 10 patented ground. The making of the agreement as averred in the complaint rests for its proof upon the testimony of Coulter, Moore and Hurd. These witnesses state the contents of the instrument with particularity of detail in the exact terms in which it is described in the complaint. The agreement is alleged to have been made about four years previous to the trial at which this testimony was given. Coulter thinks the bond, as he terms it, was taken away, after signing, by Moore or Marshall, and he never saw it afterwards; that he thought it was afterwards in his possession in his office; that he had looked for it, but was never able to find it, and don't know what became of it; that it was

written upon a printed form of a bond. Moore says it was read to him and Marshall, after it was drawn by Coulter; that he did not read it himself; that it was left with Coulter, and he never saw it afterwards. Hurd says it was read to him by Coulter before he signed it; that it was all written and not on a printed form; that Coulter took it and he never saw it afterwards. This is all the evidence in proof of the execution and contents of such instrument.

In contradiction to this testimony, Marshall, who is alleged to be the person who executed it on behalf of the Marshall Company, swears positively that he never executed such instrument, and that no such agreement was ever made. He further testifies that he did make a deed conveying to Moore, for the parties in interest, two hundred and fifty feet of the Steamboat lode; that this was the result of several conversations between him and Moore over the controversy; that it was in settlement of that controversy, and the real and entire consideration for the dismissal of the adverse suit; and that, in pursuance thereof, the adverse was dismissed the same day the deed was executed; and he explains how they came to agree upon the two hundred and fifty feet as the amount of ground to be so conveyed in settlement of the dispute. The Marshall Company's books were produced at the trial, but no order or resolution was found therein authorizing Marshall, or any one, to execute such bond or agreement. Palmer, who is an attorney-at-law, deposes that Moore was his general agent in everything pertaining to the matter; that after the adverse suit was begun, he (Palmer) came out here from Nebraska where he lived, and had a conversation with Marshall respecting a settlement of their controversies; that they came to an agreement; that Moore was then present, and that he never knew of the agreement being reduced to writing.

Coulter, on cross-examination, admits that a deed was

made between the parties the same day that the adverse was dismissed; that he drew the deed himself; that the adverse was dismissed in consideration of that deed, so far as Moore was concerned; that on that date, March 17, 1877, Marshall and Moore came to his office and requested him to make out a deed from the Marshall Company to Moore of the conflicting claims of the No. 10 and Steamboat lodes; that he drew one deed which was not satisfactory, then another which was also unsatisfactory; then Marshall and Moore went to the office of Marsh, the surveyor, and returned with a plat and field-notes; that he then made out the deed which was signed by Marshall as president, and some one as secretary of the Marshall Company; that then Moore directed him (Coulter) to dismiss the suit; and that this was the only document executed between the parties at that time. Coulter further testifies that this deed was for two hundred and fifty feet of tunnel lode No. 10, east and west of the Broadway tunnel, and that the deed was without reference to the bond. Both Moore and Hurd admit the making of this deed, and Hurd explains how it came to be made to Moore alone instead of to all of the parties in interest; that Moore was to afterwards convey to the others, and as Moore was the "guarantor of their title to the Steamboat lode," he (Hurd) thought the title of the other parties would thereby be made better.

Upon the point of possession and notice, the testimony of appellants shows that the work on the No. 10, the Steamboat and the other lodes in question, was all carried on by means of tunnels as ingress and egress for the workings; that there were no shafts or workings on the surface of the Steamboat claim, nor surface boundary stakes, and that the Steamboat workings were in drifts connected with the tunnels about four hundred feet under ground; that they never knew when they crossed the line of the No. 10 lode in running the Steamboat drifts; that they first knew of it when a survey was

made by order of court when they were enjoined by the Marshall Company.

The testimony on the other side is to the effect that the defendant companies did not, at any time previous to the survey referred to, know just where the Steamboat parties were working, and had no knowledge or notice that they were encroaching on the No. 10 ground. The facts certainly show no such open, visible and notorious possession of a part of the No. 10 property by the Steamboat parties as is sufficient to constitute the legal notice claimed by appellants.

There is much more in the whole mass of the testimony in the case which bears directly and indirectly upon the questions in issue, and in support of the judgment, but we deem it unnecessary to go into the evidence further than to present the foregoing salient points. It is not contended by the appellants that the court was bound by the special findings of the jury any more under our present practice than when under the old practice in equity the court sat as chancellor, and such special findings were regarded as advisory merely, and might be wholly disregarded by the judge in his discretion; and that view is in accordance with the view of this court as expressed in recent decisions upon the same point.

We have carefully read and examined all the testimony in the case as presented by the record, and are satisfied that the court below was clearly warranted in concluding that the weight of evidence in the case was against the averments of the complaint and the relief prayed; that whether such agreement, as claimed by appellants, was ever made or not, the deed shown to have been made was executed and accepted, at the time, in full settlement of the controversy between the parties, and was the real consideration for the dismissal of the adverse suit by the grantors of appellants. The judgment is accordingly affirmed.

*Affirmed.*