[No. 3772.]

WILSON v. WARD ET AL.

1. PRACTICE—EQUITY PROCEEDINGS—VERDICT OF JURY.
In an equity cause where the issues are submitted to a jury, their ver-
    dict is merely advisory to the court and may be disregarded, but
    the adoption of such verdict by the court is equivalent to its find-
    ings on the questions thereby determined.
2. WATER RIGHTS—INJUNCTION.
In an action to enjoin a party from operating a well and pump near a
    stream, whereby it was alleged water was diverted from the chan-
    nel of the stream, the verdict of the jury adopted by the court found
    that water actually flowing in the channel of the stream was not
    diverted by the well, and, under the pleading and by admission of
    counsel, the question as to whether the flow of the stream was di-

minished by the interruption of percolating waters which otherwise would have reached the stream was not in issue, a judgment sustaining the injunction on either ground was erroneous.

*Appeal from the District Court of Weld County.*

Mr. H. N. HAYNES, Mr. A. C. PATTON and MR. RALPH E. ESTEB, for appellant.

Mr. H. E. CHURCHILL, for appellees.

MR. JUSTICE GABBERT delivered the opinion of the court.

This action was commenced by appellees, as plaintiffs in the court below, against appellant as defendant, to restrain him from operating two wells upon his own lands, which, it is alleged, are located so near Lone Tree creek that they draw water from this stream, which he utilizes by means of pumps, to their injury. These wells will be designated as the "upper" and "lower." The answer denied that these wells drew water from the stream. On the issues joined, at the request of appellees, the cause was submitted to a jury upon the following interrogatories relating to the upper well:

1. Does the operation of the upper well and pump indirectly affect the flow of water in Lone Tree creek above the plaintiff's headgate by cutting off and preventing water from coming into said creek from springs, surface, or subterranean streams which otherwise would have found their way into said creek? A. Yes, excepting the surface flow.

3. Does the construction and operation of the upper well and pump by defendant Wilson divert the waters of Lone Tree creek in any manner, or to any extent? A. Yes.

5. Are the springs in the banks of Lone Tree creek above the upper well the natural source of supply for the waters of Lone Tree creek? A. Yes, in part.

6. Did the construction and operation by the defendant Wilson of the upper well and pump diminish or divert the sources of supply of Lone Tree creek? A. Yes, to some extent.

7. Did the construction and operation of the upper well and pump by the defendant Wilson, and the manner of its use, diminish the supply of water of Lone Tree creek at a point above the plaintiff's headgates? A. Yes, to some extent.

At the request of appellant the following interrogatories relative to this well were also propounded:

1. Did the use of the upper well and pump by defendant Wilson cause water actually then flowing in the channel of Lone Tree creek to escape from said creek and find its way to said well? A. No.

2. Did the use of the pump at the upper well by defendant Wilson prevent water percolating in the soil from finding its way to Lone Tree creek? A. Yes.

Similar interrogatories were submitted regarding the lower well, but the answers were in favor of appellant, and judgment accordingly. The court adopted the verdict, and on the findings of the jury relating to the upper well, rendered judgment in favor of appellees, restraining appellant from taking the waters of Lone Tree creek by means of this well, or operating it by pumping water therefrom. Appellant assigns numerous errors, but whether on the findings of fact and the issues made, appellees were entitled to a judgment restraining the operation of the upper well, is the only one necessary to consider.

The exhaustive brief filed on behalf of appellant is largely devoted to a discussion of the evidence, and the question of the right of the owner of the soil to intercept percolating waters upon his land before reaching a stream or spring of which they may be a part of the source of supply, but we are relieved from expressing any opinion in this case upon that question, because counsel for appellees, in his oral argument, conceded that appellant was entitled to the percolating waters which he intercepted by means of his well before they reached the stream; and in his brief, also, makes the same concession, and insists that this question was not an issue in the case, and we are bound to take him at his word, although from the

character of the questions submitted to the jury it appears to have been treated as though it was; but from an examination of the complaint, it was not, for by that pleading it is alleged "* * * that the said well and crib consists of an excavation * * * about twelve feet in diameter and about twenty-eight feet deep; that the crib is built up within said excavation * * * leaving interstices * * * to the same thickness as the lumber used, through which the water from said creek easily pours and empties into the said well and within the said crib;" and in alleging the diversion of water by means of both wells, further charged "that by means of said wells * * * constructed as aforesaid, defendant diverts and draws off the water flowing in said creek, both over the surface and through the sand and gravel composing the banks, channel, and sides of said stream."

With this question eliminated, the issue of the depletion of the stream by the operation of the upper well is narrowed to what is established with reference to the withdrawal of water by this means from the stream itself; but on this subject it is unnecessary to undertake an analysis of the evidence, because from the findings of fact, the only question we are required to determine, is the correctness of the judgment of the trial court, based upon the special findings of the jury with reference to the diversion of water by this well from the stream after it had reached and formed a part of it, and we will first ascertain what these findings were.

The questions propounded to the jury, and their answers must be considered as a whole. The first question which they were required to determine, was, whether or not the operation of the well affected the flow in the stream by preventing water reaching it from springs, surface or subterranean streams, the answer to which was, "Yes, excepting the surface flow." This answer may appear ambiguous, but when considered in connection with the evidence it is not. It appears from the testimony there are springs located across the creek from this well a short distance up the stream, the flow of which, during extreme dry weather, was not as strong

when the well was operated as when it was not. The water from these springs flowed through a surface channel, to the creek, but it was not the flow from these springs in the channel which appears to have been affected by the operation of the well, but the volume discharged by the springs themselves; so that, considering the nature of the question, in connection with the evidence, it is evident the jury meant to answer that by the operation of the well the discharge of the springs was lessened, but that such discharge flowing in the channel was not thereby withdrawn.

Question number three asks the jury to determine whether or not the operation of the well diverts the waters of the stream "in any manner or to any extent," to which they answer "Yes;" but by interrogatory one, propounded at the request of appellant, by which they were asked to determine whether or not water actually flowing in the channel of the creek found its way to the well, they say "No;" so that with reference to these questions, we must conclude either that they are inconsistent, or that the jury did not understand the meaning of the term "divert," but conceived it coupled, as it was, with the inquiry "in any manner or to any extent," to embrace the interception of waters by the well which otherwise would have found their way to the stream. This, we think, is the construction which the jury must have given this term, because the first interrogatory propounded by appellant is so clear they could not misunderstand its meaning, and besides, by questions six and seven, they certainly understood that thereby they were required to ascertain the effect of the operation of the well upon the supply of the stream only, and the use of the word "divert," in number six, may have tended to confuse them regarding the meaning of the same word in number three; but questions six and seven, above noticed, and numbers one and two submitted by appellant, contemplating, as they did, the distinction between the interception of percolating water on its way to the stream, and the withdrawal of water from its channel, and their answers respectively, clearly demonstrates that by their verdict

the jury found that the operation of the well affected the flow in the stream by diminishing its source of supply, which, in part, consisted of waters percolating through the land of appellant on its way to the stream, but that the water actually flowing in the channel was not withdrawn by such operation. In an equity cause, where issues are submitted to a jury, their verdict is merely advisory to the court, and may be disregarded, but the adoption of such verdict by the court is equivalent to its findings on the questions thereby determined. 11 Ency. Pl. & Pr. 706; *Warring v. Freear*, 64 Cal. 54. The withdrawal by means of the well, of water actually flowing in the stream, could not be permitted, to the injury of the prior rights of appellees (*City of Emporia v. Soden*, 37 Am. Rep. 265; 25 Kansas, 588), but by the finding of the jury, and its adoption by the court, this question was eliminated from the case, and the judgment of the trial court must have been based either upon a misconception of what the jury did find, or upon the ground that the interception of the percolating waters on their way to the stream entitled appellees to the judgment rendered; but by the express disclaimer of their counsel, and the issues made by the pleadings, this question is also withdrawn from the case; and although we are not prepared to say that the views entertained by the learned judge before whom this cause was tried on the rights of the parties with reference to these percolating waters are not correct, we refrain from expressing any opinion, because they are not involved in this action; and as the findings of fact disclose that no water was diverted from the stream itself, and appellees renounce any right to the percolating waters before they reached the stream, and tendered no such issue, they were not entitled to a judgment in their favor, but on the contrary, judgment should have been rendered for appellant.

The judgment of the district court, relating to the upper well, is reversed, and the cause remanded, with directions to dissolve the injunction, and dismiss the action at the cost of appellees.

*Reversed and remanded.*

### ON PETITION FOR REHEARING.

PER CURIAM.  Appellees petition for a rehearing, based upon the ground that we are mistaken, in holding that the trial judge adopted the findings of the jury with respect to the diversion of water by the upper well from the channel of the stream, and based the decree thereon, and insists that he made findings of his own, which their counsel claim is established by the decree itself.  The entire record is before us, and whether the court adopted the findings of the jury or not, can be determined from the record as a whole, which clearly discloses that the verdict of the jury was adopted, and the judgment rendered based either on a misconception of what the findings were, or as to what the issue was.  In his original brief counsel for appellees says : "The issue that was tried to the court was submitted to a jury at the request of appellees, and the interrogatories covering the issue that was tried, and several others, were submitted to the jury, and the jury answered the interrogatories, with which answers the court agreed in so far as the answer to any of said interrogatories affected the issues in the case."  And elsewhere in his brief, says : "The court, by its finding of fact, in so far as any interrogatory affected the real issue of the case, agreed with the verdict of the jury."

The only issue was the diversion of water from the stream itself.  This the jury found in favor of appellant, and if, as counsel say, the court agreed with the jury, it in effect adopted their verdict, or, at least, made the same finding they did ; and therefore, based its judgment upon a finding of fact with respect to the diversion of water by the upper well, which did not entitle the appellees to the judgment rendered ; and further, from other remarks, it is evident the learned judge, in determining the rights of the parties to this controversy, based his conclusions upon the proposition that the operation of the well depleted the stream, without any distinction between the interception of percolating waters and their withdrawal from its channel.

Again, the trial judge, in commenting on the verdict with respect to the lower well, said: "A question of fact was submitted to the jury, for which they were specially called, and they found that the allegations that the lower well diverted water from the stream, either directly or indirectly, was not sustained by the proof, and with their verdict we must rest content; otherwise, it would make the calling of a jury to settle a question of fact in a chancery proceeding simply a farce. I do not feel justified in disregarding the recommendation of the jury." He then proceeds to comment on the verdict with reference to the upper well, and after employing this language with respect to part of the verdict, it is not probable that the remainder would be disregarded, without expressly so stating.

But it is not necessary to pursue this subject further. Since the filing of the petition, the evidence has been carefully examined, from which it appears that even if it should be conceded that the trial court made findings of fact independent and different from the verdict by which it found, on the only issue in the case, in favor of the appellees, then its judgment is clearly erroneous, because there is no evidence to sustain such finding. True, the evidence did establish that after the operation of the upper well for a considerable period, the flow in the stream was somewhat depleted, but this was occasioned, not by the withdrawal of water from the channel of the stream, but by the interception and collection of percolating waters on their way to it. This effect was practically limited to the springs mentioned in the main opinion, but, as we have already noticed, it was not the flow from these springs, in the channel, which was affected by the operation of the well, but the volume discharged by the springs themselves. This result may have been caused by the interception of subterranean waters which, in part, supplied such springs, but the right to such waters was not in issue; nor does this effect on the springs make the case of *Bruening v. Dorr*, 23 Colo. 195 (relied upon by counsel for appellees) in point; for in that case, the judgment was based

upon the fact that the water diverted, as against the rights of a prior appropriator, consisted in its diversion from a stream fed by springs, and not a diminution of such flow by the interception of percolating water, which may have formed part of the source of supply of such springs.

On the only issue in the case, under the evidence, the judgment should have been for appellant. The petition for rehearing is denied.

*Petition denied.*