[No. 4267.]

The Buckers Irrigation, Milling and Improvement Company et al. v. The Farmers' Independent Ditch Company.

1. **Equity Proceedings—Findings of Jury—Decree.**

In an equity proceeding where questions are submitted by the court to a jury, the fact that the court ordered a final decree to be entered in accordance with the verdict of the jury is not conclusive that the findings of the jury were adopted without any modification. The decree as a whole must be looked to, to determine that question.

2. **Same—Findings of Court.**

Where from a final decree it appears that the court from the evidence and upon the answers returned by the jury, taken and construed together, found the issues joined, in favor of the plaintiff, it must be inferred that the court found those facts in favor of plaintiff which were responsive to the issues made by the pleadings and which were essential to support the judgment rendered, unless the contrary appears from the specific findings.

3. **Water Rights—Increase of Flow of Stream—General and Specific Findings.**

A specific finding that a ditch constructed along and in the natural channel of a stream intercepts all the water flowing in the channel and all the surface and subterranean flow of the stream does not contradict a general finding that the natural flow of water in the stream has not been increased by the construction of the ditch.

### 4.  Equity Proceedings—Findings of Jury.

In an equity proceeding where the issues are submitted to a jury their verdict is merely advisory to the court and may be disregarded or the court may adopt such findings in whole or in part, and in lieu of those not adopted make findings of its own.

### 5.  Water Rights—Saturated Gravel.

Water saturating the gravel and sand constituting the channel and source of a stream is as much a part of the stream as the surface flow and is governed by the same rules.

### 6.  Water Rights—Increased Flow of Stream.

Where parties base their right to divert water from a stream in preference to prior appropriations upon an alleged increase of the flow of the stream they must clearly establish that they have increased the flow of the stream, and it must be an actual increase resulting from an addition of water to the natural stream which would not otherwise pass down either its surface or subterranean channel to the benefit of the prior appropriators.

### 7.  Water Rights—Percolating Water.

Water passing through the sand and gravel constituting the bed of a stream and the lands so nearly adjacent that the only and natural outlet would be through the channel of such stream, is not percolating water as ordinarily defined by the common law, but is a part of the water of the stream, and its diversion will not be permitted where the rights of prior appropriators will be injuriously affected.

### 8.  Water Rights—Parties.

Where defendants made no claim to certain water in controversy, but alleged that it was claimed by others who were not parties to the suit, and the testimony showed that defendants were interfering with the water to the injury of plaintiff, defendants cannot object to a decree establishing plaintiff's right thereto as against them and restraining them from diverting the same because other parties claiming the water were not made parties to the action.

### 9.  Water Rights—Parties—Evidence.

Where certain water was discharged from a ditch into the river above defendant's headgate and was turned into defendant's ditch under an agreement with the parties claiming the right to the water, whereby defendant for pay carried the water through its ditch for the use of the claimants, and when not called for by said claimants it went into the general supply for defendant's ditch and was distributed impartially amongst defendant's stockholders, defendant cannot object to a decree establishing plain-

tiff's rights to said water and enjoining defendant from diverting the same, on the ground that the claimants of the water were not parties to the action.

**10.  Water Rights—Jurisdiction—Statutory Construction.**

Section 2399, Mills' Ann. Stats., which provides that the court having properly acquired jurisdiction of a proceeding to adjudicate water rights shall thereafter retain exclusive jurisdiction for that purpose, does not apply to an action to protect rights which have been awarded in such adjudication proceeding. An action to protect such rights may be brought in any county having jurisdiction without regard to the county in which the statutory proceedings were had.

**11.  Water Rights—Parties—Substitution.**

In an action to restrain a ditch company from diverting water, in which the water commissioner in his official capacity was joined as a party defendant, defendants cannot object to an order substituting the commissioner's successor in office, however irregular the proceedings of substitution may have been. The commissioner had no personal rights to protect, and cannot complain because he was relieved from all further liability in the action, and the rights of the ditch company were in no way prejudiced by the substitution.

**12.  Evidence—Admission of Incompetent—Harmless Error.**

The admission of incompetent evidence is not prejudicial error that will justify a reversal, where the finding on the evidence could not have been otherwise, independent of the incompetent evidence.

**13.  Water Rights—Evidence—Statutory Statements.**

In an action to protect water rights, in which there was no issue as to the question of priority, statutory statements of claim to the water in controversy were immaterial and were properly excluded from the evidence.

**14.  Equity Proceedings—Juries—Discretion of Court.**

In an equity proceeding where a jury is empanelled for the purpose of advising or aiding the court in ascertaining the facts, it is within the discretion of the court to determine what interrogatories shall be submitted to the jury, and its determination in this respect will not be disturbed on appeal.

**15.  Same.**

Parties to an action cannot insist upon a finding of fact, even though material to the issues, unless it appears from the testimony that it was involved.

**16.  Equity Proceedings—Findings of Court—Entering Decree.**

In an equity proceeding where upon the return of a verdict

by the jury the court orally announced its findings and directed the entry of a decree, which was afterwards done in accordance with the court's finding, though somewhat more in detail, the fact that the decree was prepared and entered upon the record after the court had adjourned for the term would not invalidate the decree.

*Appeal from the District Court of Weld County.*

Mr. Charles D. Hayt and Mr. Clyde C. Dawson, for appellants.

Mr. J. W. McCreery, for appellee.

Mr. Justice Gabbert delivered the opinion of the court.

The subject-matter of controversy is the right to water for the purpose of irrigation. To determine this question appellee, as plaintiff, brought an action against appellants, as defendants. From a judgment for plaintiff the defendants appeal.

The respective main ditches of the plaintiff and the defendant Buckers company take their supply from the South Platte River. By statutory adjudication proceedings the priorities of these ditches to the waters of this stream have been established, those of the plaintiff being in advance of the Buckers company. The water in controversy is conducted through supply ditches known as the Beaver Lake, Smith Lake and Held Lake ditches. All these ditches were constructed since the adjudication proceedings. The first two belong to the Buckers company, and the latter to individuals who were not parties to this action. The water thus obtained is either drawn from sloughs or lakes, or collected by means of excavations between these lakes and sloughs and the river, and is either turned directly into the Buckers main ditch or the volume from these ditches which is discharged into the river is turned into that ditch. So far as ma-

terial to notice, it is claimed by plaintiff that all the water thus conserved will find its way into the river through natural channels and tributaries of that stream, were it not for the fact that it is intercepted by these supply ditches, and it is therefore contended that the Buckers company is utilizing water which should go to the plaintiff to supply its priorities. To this claim as to the Buckers and Smith Lake ditches, the defendants interposed two defenses which, in effect, are (1) that these supply ditches do not draw water from any tributary of the river; and (2) that by dredging between the river and the sloughs they have increased the flow of the natural channels along which these supply ditches extend by reclaiming waters resulting from seepage arising from the irrigation of uplands and from other sources which would not otherwise reach the river through any natural channel; and therefore claim they are entitled to this increase. In order to more fully understand their position, it is proper here to notice that the defendant ditch companies, by their joint answer, admit that they have made excavations along the channel leading from Beaver Lake to the river for the purpose of collecting, controlling and diverting the water from that lake, but assert that by so doing they have not interfered with the flow of water from the lake to the river, for the reason that the water from this source does not flow into that stream. They also, in effect, plead the same facts and assert that the same conditions exist with respect to Smith's Lake and its outlet, except, perhaps, they claim that previous to the construction of this ditch no channel existed between Smith's Lake and the river. With respect to the Held ditch, the defendant companies denied that they had constructed that ditch, or that they claimed or were diverting any water from that source. The defendant Hodgson answered to the effect that the

right to the waters conducted through this ditch was claimed by certain persons who, however, were not parties to this action, and that this water was reclaimed by the construction of a drainage ditch by these parties, who utilized it through the ditches of the defendant companies, and that he, in pursuance of his duties as water commissioner, turned it into these ditches.

For the purpose of aiding or advising the court on particular questions of fact material to the issues between the parties, questions were submitted to a jury for answer. From these answers it appears that each of the seepage or supply ditches is constructed in or adjacent to channels through which water flows into the river, and that the water thus collected is obtained from these channels, and from the sand and gravel underlying them and the sloughs and lakes which form their sources; that no water has been turned into either of these channels from any other source, and that the water flowing in these supply ditches has been increased to some extent since their construction from the irrigation of adjacent lands, but in what volume was not known. From these findings it is apparent that the several channels along and adjacent to the respective ditches are natural tributaries of the river. It is claimed by counsel for the defendants, however, that from the answers returned by the jury it appears that the volume of water flowing down the channels along which the Beaver and Smith Lake ditches are constructed has been increased by means of their supply ditches; that the findings of the jury were adopted by the court, and that the court erred in not awarding them this increase. Whether or not the court adopted as its own any finding which the jury may have made with respect to an increase of the flow of these streams is a matter which we must ascertain from

such sources as it will be proper to consider in determining that question.

It appears from the record that the court ordered a final decree to be entered in accordance with the verdict of the jury. This is not conclusive that the findings of the jury were adopted without any modification whatever. We must look to the decree as a whole to determine this question. After this verdict was filed the character of the judgment which should be rendered was discussed by counsel, and the court in expressing its views as to what was established by the verdict, very properly stated, in substance, that the answers must be construed as a whole; that it probably appeared there had been an artificial increase of the flow of water through the different sloughs or channels along and in which these ditches had been constructed, but that the defendant companies had not increased the supply of these several streams from any extraneous source, and that in his opinion, from the testimony, whatever increase there might have been in the flow of these streams or sloughs occasioned by dredging and ditching was simply the concentration of the water already present in the gravel of these several channels. Turning to the decree which was finally entered, it appears that the court, from the evidence and upon the answers returned by the jury, taken and construed together, found the issues joined in favor of the plaintiff. From this we must infer that the court found those facts in favor of the plaintiff which were responsive to the issues made by the pleadings and essential to support the judgment rendered, unless the contrary appears from the specific findings which follow—*Fanny Rawlings M. Co. v. Tribe,* 29 Colo. 302; 68 Pac. 284; so that, according to this finding, the issue between the parties on the subject of increase was found in favor of the plaintiff. With

respect to specific findings on that question, it appears from the decree that the defendant ditch companies, by the construction of their ditches, have intercepted all the waters flowing in Beaver Brook, which is the name of the channel along which Beaver Lake ditch is constructed, and by such ditches have diverted all the surface and subterranean flow of that stream. This does not conflict with the general findings in favor of plaintiff. On the contrary, it indicates that the water which the defendants were diverting was derived solely from that which would naturally flow down the stream, and hence there was no increase. The court further finds the same conditions to exist with respect to the Smith Lake ditch, and that the surface and subterranean flows of the channel along which this ditch is constructed have not been increased to any appreciable or measurable extent from any source whatsoever. This is expressly against the defendants on the issue under consideration.

In an equity case, where the issues are submitted to a jury their verdict is merely advisory to the court, and may be disregarded.—*Wilson v. Ward,* 26 Colo. 39. The court may adopt such findings in whole or in part, and in lieu of those not adopted, make findings of its own. From the record which discloses what the court did in this respect, it seems clear that if the jury, by the answers returned, did find that the defendant ditch companies had increased the flow of either of the streams along which the Beaver and Smith Lake ditches were constructed, that the court disregarded this finding, and in lieu thereof found that such was not the fact. The location of these ditches with respect to the streams flowing from the sloughs or lakes from which they derived their supply of water, coupled with the finding of the jury that each of these streams was a tributary of the river,

and that the water obtained by excavating these ditches was entirely secured from the surface flow and that flowing through the sand and gravel underlying these sloughs and streams, leads irresistibly to this conclusion. By these ditches the defendant companies not only intercepted the original surface flow of these streams and withdrew water from the sloughs or lakes supplying them, but have likewise diverted the water saturating the sand and gravel constituting the bed of their channels and sources. This water is as much a part of the several streams as the surface flow, and is governed by the same rules.—*Platte Valley Irr. Co. v. Buckers Co.*, 25 Colo. 77; *City of Los Angeles v. Pomeroy*, 57 Pac. 585. The defendants have not added to the water flowing down these several channels from any source, but are only diverting that which would naturally flow therein. Where, as in this instance, the only water secured by means of the ditches, is derived from the natural flow of a stream, it must clearly appear that the water thus obtained is an actual and not an artificial increase. To permit parties, by excavations in channels, or in lands so nearly adjacent that the water thus concentrated is derived from the stream itself, would result in the depletion of the stream, because it is obvious that to the extent water is drawn from a natural channel, however accomplished, the result will be to decrease the volume discharged below the point of such diversion in the same proportion, and hence, the necessity of parties where their rights are based upon the alleged increase of the flow of a natural stream, to clearly establish that they have accomplished this result. It is only the actual increase resulting from the addition of water to a natural stream which would not otherwise pass down either its surface or subterranean channel, to the benefit of other prior appropriators, which the law recognizes as an

increase of that character which can be diverted as against those entitled to its natural flow.

In so far as material to the issues between the parties, with respect to the Held ditch, the court found the same facts as regards the increase of water, and it is unnecessary to notice this phase of the case in detail.

No question of percolating waters is involved, because the water passing through the sand and gravel constituting the bed of the stream and the lands so nearly adjacent that the only and natural outlet would be through such channel, are not percolating waters, as ordinarily defined by the common law; but, as already stated, are a part of the waters of the stream. If they are withdrawn, the result is as much a depletion of the natural watercourse, of which they constitute a part, as though diverted from the surface. Diversion by this means cannot be permitted when the rights of others are injuriously affected, for the natural and direct sources supplying the natural streams of the state must be protected from invasion; otherwise the rights of appropriators could be destroyed. Neither do we pass upon the question of seepage arising from irrigation, because it does not appear that any ascertained quantity of water was collected by either of the ditches from such sources.

Counsel contend that the court erred in rendering judgment against the defendants as to the Held's Slough ditch, irrespective of the question of increase. They base this contention upon the fact that the answer of the defendant Hodgson was not denied; that the persons who, from this answer, it appeared claimed the waters from this ditch were not parties to this action, and that there is no evidence tending to show that either of the defendants ever interfered

with the water secured through this ditch.   Whether
or not the persons who, according to the answer of the
defendant Hodgson, claimed the water diverted by
this ditch, should have been made parties, and that
their rights to such water could not be determined in
their absence—a question which we do not deter-
mine—is wholly immaterial, if it appears from the
testimony that the defendants against whom judg-
ment was rendered were interfering with this water
to the injury of the plaintiff.   The defendant ditch
companies made no claim to this water and they can-
not complain of any decree establishing the right
thereto in the plaintiff as against them, so that their
objections to the decree can only be considered in so
far as it may include matters not warranted by the
testimony under the issues on this branch of the case.
They were enjoined from diverting the water from
this source into their ditch.   This is the only part of
the decree to which they can be heard to raise any ob-
jection, because they have no interest in the water
from this source.   It appears, however, from the tes-
timony, that the decree in this respect is correct.   This
ditch discharges its water into the river above the
headgate of the main ditch of the Buckers company,
and according to the testimony, is turned into that
ditch under an agreement with the parties claiming
it to pay them for its carriage.   This water was han-
dled precisely as the water derived from the Smith's
Lake ditch.   The Buckers company pays its superin-
tendent for distributing this water, and when not
called for by the claimants mentioned in the answer
of the defendant Hodgson, it goes in with the general
supply flowing in the Buckers ditch, and is distrib-
uted impartially and prorated among all of the stock-
holders of the Buckers company.   It thus appears
that the latter company is deriving a direct benefit by
the use of this water, and it certainly cannot complain

of the decree which prevents it from diverting it as against the prior rights of the plaintiff.

It appears from the pleadings and supplemental answer of the defendants that the proceedings adjudicating the rights to the use of water in the water district in which the ditches of the respective parties are located, were had in the district court of Arapahoe county. For this reason counsel for defendants objected to the jurisdiction of the trial court, to entertain the action, which was overruled. This objection was based upon the provision of sec. 2399, 1 Mills' Ann. Stats., which, in effect, provides that the court having properly acquired jurisdiction of a proceeding to adjudicate water rights, shall thereafter retain exclusive jurisdiction for that purpose. No adjudication of water rights is sought in this action; no modification of the decree is asked. Plaintiff is simply seeking to protect the rights which were awarded in the adjudication proceedings. For this purpose the court had jurisdiction without regard to the court in which the statutory proceedings were had.—*Medano Ditch Co. v. Adams,* 29 Colo. 317; 68 Pac. 431.

Appellant Hodgson was made a party, in his official capacity as water commissioner of the district in which the main ditches of the irrigation companies are located. During the progress of the trial, his successor was substituted in his stead. It is claimed that this substitution was irregular for reasons assigned, which it is not necessary to mention in detail. However irregular the proceedings of substitution may have been is not a matter of which appellants can complain. Mr. Hodgson had no personal rights to protect; he was defendant in his official capacity; therefore, he cannot complain because by the action of the court he was relieved from all further liability in the action; neither were his codefendants prejudiced

by the substitution, because the judgment rendered against them was in no manner affected by the change. The defendants cannot take advantage of irregularities or errors with respect to a codefendant which do not affect their substantial rights.—*School District v. Flanigan,* 28 Colo. 431.

On behalf of plaintiff there was offered and received in evidence, over the objection of the defendants, copies of two decrees rendered in a case in which another party was plaintiff, and the defendant ditch companies were defendants. By these decrees it appears that the court, in the action in which they were rendered, had determined that Beaver Brook, which it is claimed by plaintiff, is the natural outlet of Beaver Lake, was a natural stream, and a tributary of the South Platte River, and the purpose of these copies, as stated by counsel for plaintiff, was to prove these facts by these decrees. We shall not determine whether the court erred or not in view of the fact that the testimony bearing on the question of Beaver Brook being a natural stream and tributary of the river is of that character that the finding that it was could not have been otherwise, independent of these decrees. Those best acquainted with Beaver Lake, or what is termed by some of the witnesses Hammett's Slough, and who have had the best opportunities of observing the flow of water from that source to the river, agree that at times there was a surface flow all the way, while at others such flow appears to have disappeared in the sands of the channel. True, some witnesses on behalf of the defendants state that they had crossed between the river and the lake occasionally, and had never seen water flowing down to the river, but these were only casual observations. All the witnesses appear to agree that water did flow into the lake. Others admit that at times there was a stream for some distance towards the river, or that

the water from the lake spread out over swampy land lying between the lake and the river. There does not appear to be any other outlet than the river through which the water of the lake could escape, and the natural drainage is in that direction. So that, although it might be said there is some conflict in the testimony as to the flow of the water from Beaver Lake to the river, we are of the opinion that it is so overwhelmingly in favor of the claim of plaintiff that it does, that the finding could not have been otherwise than what it was. The admission of incompetent testimony which does not affect the result is not prejudicial error.

On behalf of the defendants there was offered in evidence, but refused, certain statutory statements of claim to the water in controversy. Under the issues in this case, these statements were wholly immaterial. There was no question of priority to these waters involved, nor any other question upon which any claim based upon these statements in any manner depended.

The only remaining question relates to the refusal of the court to submit to the jury the question of whether or not the waters intercepted by the supply ditches would reach the river in time to be of any value to the plaintiff during the irrigation season, or during the months of July or August. In cases of this character it is certainly within the discretion of the court to determine what interrogatories shall be submitted to a jury empanelled for the purpose of advising or aiding it in ascertaining the facts, and its determination in this respect cannot be disturbed. Aside from this, counsel do not direct our attention to any testimony from which it appears that the determination of the question of fact as to the time or the period when the water might reach the river is at all material. True, they claim the evidence does not show that the water in controversy would have

reached the river in time to be of any value to plaintiff. In the circumstances of this case that is not sufficient, for it must have affirmatively appeared that the water would not have benefited the plaintiff; so that it does not appear that the action of the court in refusing to submit the interrogatory prejudiced the rights of the defendants. Parties to an action cannot insist upon a finding of fact, even though material to the issues, unless it appears from the testimony that it was involved.

The judgment of the district court is affirmed.

*Affirmed.*

---

### On Petition for Rehearing.

*Per Curiam.*—In support of a petition for rehearing, appellants earnestly contend that there is nothing in the record to show that any of the findings of the jury were modified, or set aside, or that any additional findings of fact were made by the court until after it had adjourned for the term, and that neither appellants nor their counsel were present when these findings were made.

The findings of the court were announced orally after the return of the verdict by the jury. From these it appears that the findings of the jury were modified. The formal decree was not then prepared, but it was ordered to be entered as prayed. Later it was, and appears to conform with the views of the court on the facts and conclusions of law announced after the verdict had been returned. True, it enters more into details than stated by the court orally, but on the important question, viz., that the increase which appellants claimed was artificial and not actual, the decree is in conformity with the views expressed by the court at the conclusion of the trial. This decree was not prepared or spread upon the rec-

ords until after the court had adjourned for the term, but this was merely completing that which the court had directed when in session.

*Petition for rehearing denied.*