[No. 4502.]

McClelland et al. v. Bullis.

|    |    |
|----|----|
| 34 | 69 |
| f34 | 447 |

1.  **Equity Proceeding—Canceling Instruments—Duress—Juries— Verdicts.**

An action to cancel certain deeds, mortgages and promissory notes on the ground that they were obtained from plaintiff by duress and without consideration is purely an equitable action, and a verdict rendered therein by a jury is only advisory and the court may disregard such verdict and decide the issue for itself upon the evidence produced.

2.  **Equity Proceeding—Juries—Estoppel.**

A party to an action in equity by permitting a jury to be impaneled, without objection, to try the issues and return a general verdict did not thereby treat the action as one at law so as to estop him from afterwards asserting that it was an equitable action.

3.  **Equity Proceeding—Verdicts.**

In an equity proceeding where the testimony upon the entire case was presented to a jury and the court set aside the verdict of the jury, he could pass upon the case as made and decide it upon the evidence produced before the jury without going through the form of a trial by the court, where neither party offered or asked to be permitted to introduce further testimony.

4.  **Appellate Practice—Errors.**

To procure a reversal of the judgment it must be shown that the court below committed error and that plaintiff in error was not responsible for it.

5.  **Pleading—Denial—Admissions.**

Where a complaint in an action to cancel certain deeds, mortgages and notes alleged that they were procured by duress

and also alleged that they were without consideration, an answer which denied the duress and fails to answer the allegation of want of consideration admits that the instruments were without consideration.

6. Evidence—Weight—Number of Witnesses.

The number of witnesses does not always establish the weight of evidence. The fact that only one witness testified on one side of a proposition while three testified on the other does not necessarily establish the weight of evidence with the three.

7. Evidence—Duress—Consideration.

In an action to cancel certain deeds, mortgages and notes, the evidence examined and held sufficient to sustain a finding that the instruments were executed under duress and without consideration and to support a decree canceling the instruments.

8. Evidence—Duress—Cancelation of Instruments.

In an action to cancel certain instruments on the ground that their execution was procured without consideration and while plaintiff was under duress, where the pleadings did not allege that the instruments in question were executed by plaintiff because of false and slanderous reports in relation to the character of a person, it was not error to sustain an objection to a question propounded to plaintiff as to whether or not he had made a certain statement injurious to the character of such person.

9. Evidence—Duress.

In an action to cancel certain instruments alleged to have been procured from plaintiff while under duress, testimony that immediately after the execution of the instruments plaintiff was confined to his bed because of a shock to his nervous system was admissible as tending to show the mental condition of plaintiff immediately after the transaction.

*Error to the District Court of Clear Creek County:
Hon. A. H. De France, Judge.*

The complaint in this action alleges, among other things, that on the 28th day of January, 1899, the plaintiff was the owner in fee and entitled to the possession of certain mining property; and that he was also the owner and in possession of office furniture and a law library situate in the Hanchett Block

in Idaho Springs. Paragraph 2 of the complaint is as follows:

"That on, to wit, the said 26th day of January, 1899, at and within the said county of Clear Creek and state of Colorado, the defendant, George E. McClelland, together with one John Morris and one William Morris, without any process, warrant or authority of any kind or nature whatsoever, did, with force of arms, maliciously and willfully imprison the said plaintiff in a certain room and did then and there display pistols in the presence of and toward the said plaintiff in a threatening and menacing manner, and did then and there intimidate the said plaintiff and threaten to kill him unless he, the said plaintiff, would then and there write and sign a warranty deed conveying to the said McClelland the one-fourth interest in the Atlantic and Brighton lode mining claims in Gilpin county, which said claims had been recently theretofore deeded to the said plaintiff by the said ........... (whose name for obvious reasons is omitted) as security for certain advances theretofore made and thereafter expected to be made by the said plaintiff for the account of the said ............; and also a statment to the effect that he, the said plaintiff, had theretofore attempted to force the said ........... to permit him to have and indulge in sexual intercourse with her against her will and that he, the said plaintiff, had, after the said supposed attempt, threatened that if she, the said ............, did not keep quiet about it, he, the said plaintiff, would send the said McClelland to the penitentiary, and containing also many other false, malicious, wicked and scandalous things; and also another statement to the effect that he, the said plaintiff, had theretofore violated certain duties and obligations as a member of a certain secret order and containing also many other false, malicious, wicked

and scandalous things; and also a check for one thousand dollars ($1,000), in which the First National Bank of Idaho Springs, Colorado, was to be named as drawee and one E. M. Sabin, otherwise called Edwin M. Sabin, was to be named as payee; and also a check for five hundred dollars ($500), in which the said bank was to be named as drawee and the said George E. McClelland was to be named as payee; and also a check for the sum of two hundred dollars ($200), in which the said bank was to be named as drawee and one W. S. Bagot was to be named as payee; and also a check for the sum of two hundred dollars ($200), in which the said bank was to be named as drawee and one George Atcheson was to be named as payee; and also a promissory note to be dated on the said 26th day of January, 1899, for the sum of two thousand one hundred dollars ($2,100), in which the said ............ was to be named as payee and which was to be made due and payable ...... days after date, together with a mortgage on the real property described in the first paragraph hereof to secure the said promissory note; and also a promissory note to be dated on the said 26th day of January, 1899, for the sum of two thousand dollars ($2,000), in which the said Mary Morris was to be named as payee and which was to be made due and payable sixty days after date, together with a chattel mortgage on the personal property described in the first paragraph in this complaint to secure the payment of the said last above mentioned promissory note; and also a receipt for the sum of fifty dollars ($50) for legal services due to the said plaintiff by the said McClelland.''

In paragraphs 3 and 4 of the said complaint plaintiff alleges:

''III.   That the said statement to the effect that this plaintiff had theretofore attempted to force the

·said . . . . . . . . . . . ; to permit him to have and indulge in sexual intercourse with her against her will, and that he, the said plaintiff, had, after the said supposed attempt, threatened that if she, the said . . . . . . . . . . . ., did not keep quiet about it, he, the said plaintiff, would send the said McClelland to the penitentiary; and the said statement to the effect that the said plaintiff had theretofore violated certain duties and obligations, are each, all and every of them, in each, all and every particular untrue and utterly false; that plaintiff was not, on said 26th day of January, 1899, in any manner indebted to any of the defendants herein, nor to the said W. S. Bagot, nor to the said George Atcheson, nor to the said E. M. Sabin; that the defendant . . . . . . . . . . . was then indebted to the plaintiff for certain advances made for her account; that the defendant George E. McClelland was then and there indebted to the plaintiff in the agreed sum of fifty dollars ($50) for legal services theretofore rendered by plaintiff for him at his request; that no part of the said indebtedness of the said . . . . . . . . . . . or of the said McClelland has ever been paid.

"IV.    That, by reason of the said imprisonment and the said threats, and the said intimidation, and the said exhibition and show of force, this plaintiff was then and there put in great fear of his life, and did then and there, without any consideration therefor, under the duress so caused and under the fear that unless he did so, the said imprisonment would continue and the said threats be carried out, write and sign the deed, statements, checks, promissory notes and mortgages above mentioned, for the sole purpose of securing his liberty and saving his life."

Paragraph 5 of the complaint alleges that Edward M. Sabin, a notary public, purported to take the acknowledgments of the plaintiff; that the state-

ments, mortgages and deeds were executed by the plaintiff as of his free and voluntary act and deed; and denies that any of the statements were signed as the free and voluntary act or deed of 'the plaintiff, and that Sabin well knew that fact.

The sixth paragraph alleges that on the 27th day of January, 1899, the mortgages were filed for record with the clerk and recorder of Clear Creek county; that the promissory notes were not due; that the defendants were insolvent; that if the statements were published, plaintiff would suffer great and irreparable injury and damage in his business; that the negotiation of the checks and promissory notes would ruin plaintiff financially; and that the mortgages constitute a cloud upon the title of plaintiff to his property.

The plaintiff prays judgment that the defendants be enjoined and prohibited from publishing the statements, and that the statements may be ordered to be delivered up and canceled, and that defendants be enjoined and prohibited from assigning, endorsing, negotiating or transferring the checks or notes; that they be ordered to be delivered up, canceled and held for naught, and that their collection be enjoined; that ............ and Mary Morris be required to surrender and deliver to plaintiff the mortgages in which they are named as the grantees and to execute proper releases. Plaintiff also asks for costs and such other equitable relief as to the court may seem meet and proper.

To the foregoing complaint the defendant Mc-Clelland filed an answer portions of which, upon motion of the plaintiff, were afterwards stricken. An answer was also filed on behalf of............and Mary Morris. ..........then appeared and moved to strike from the files the joint answer of..........and Mary Morris, in so far as the same purported

to be the answer of............. She supported her
motion by the following affidavit:

"............., of lawful age, being first duly
sworn, on oath deposes and says:   That she is one
of the defendants in the above entitled cause; that
on or about the fourth day of March, 1899, a plead-
ing was filed in said cause signed by E. M. Sabin,
Esq., as attorney for the defendants............
and Mary Morris and Messrs. Williams & Haggot as
of counsel, purporting to be the joint answer of said
defendants to the complaint herein; that she has
never employed or caused to be employed either said
Sabin as her attorney nor Williams & Haggot as
counsel to represent her in this action, nor has she
authorized them, or either of them, to appear for her
or on her behalf, for the purpose of filing said pre-
tended joint answer; or for any other purpose
whatever in connection with this action; that said pre-
tended joint answer was filed without her sanction,
knowledge or consent, and she did not learn that said
action had been taken until the 13th day of March,
1899.

"Affiant further states that said pretended joint
answer contains many allegations which are untrue
and entirely without foundation in fact, and that she
has not, cannot and will not verify any pleading con-
taining such allegations or statements; that in said
answer she is represented as alleging and claiming
that the plaintiff in this cause seriously and perma-
nently injured her by the commission of certain
wrongs against her and said defendant Mary Morris,
and that in consideration of and to repair said in-
juries and wrongs said plaintiff made a certain
agreement with her; that the foregoing allegations
of said pretended joint answer and other allegations
therein contained are untrue; that she has not been
so injured; that said wrongs have not been com-

mitted, and that no such agreement as that alleged in said pretended joint answer to have been entered into by said plaintiff was ever made."

This motion was sustained.

Mary Morris then filed a separate answer, wherein she denied each and every allegation in the second paragraph of the complaint.

Defendant McClelland then filed his separate answer, which is as follows:

"He admits the allegations of the said complaint in the first paragraph of paragraph one contained, but with respect to the allegations contained in paragraph 2 of the said complaint, he denies that he ever did, with John Morris, or William Morris, or with any other person, or alone, maliciously, or willfully, or in any manner, or at all, imprison the said plaintiff in a certain room, or in any room, and denies that he ever did, or any person with him or in his company, display any pistol in the presence of the said plaintiff, in a threatening or menacing manner, or in any manner whatever; and denies that he then and there, or at any place or time, intimidate the said plaintiff or threaten to kill him, unless the said plaintiff would then and there write and sign a warranty deed, or write and sign other papers and statements, as set forth in the said paragraph of said complaint.

"Denies that he himself, or that any persons with him ever, at any time, threatened or menaced the said plaintiff in any manner for any purpose whatever, or at any time whatever; but on the contrary, avers that the said plaintiff did then and there, to wit, on the day on which said instruments in writing bear date, make, sign, execute and acknowledge and in some cases swear to said papers referred to in the said complaint; and that such execution, signing, acknowledging and swearing to

were done voluntarily, of his own free will, and without any menace or threats on the part of this defendant or of any person with him or in his company.''

The other defendant then filed her separate answer, which is as follows:

''That she never received nor had it in her power to produce either the note alleged in the complaint to have been made payable to her or the mortgage securing the same. That there was no consideration for the execution of said note or mortgage as charged in said complaint. That her codefendants were not, nor was either of them, authorized by her to demand or receive any such note or mortgage, and that all the things done by her codefendants, so far as the same may be correctly set forth in said complaint, of the truth of which allegations she has no personal knowledge, in so far as the same purport to have been done on her behalf or on her account, or for her benefit or the benefit of other persons were done without any request or license on her part, and that she is not chargeable with the same.

''Wherefore this defendant disclaims all knowledge of the responsibility for the acts charged against her codefendants, and all interest in said promissory note and mortgage, and prays that she be adjudged to go hence without day.''

Upon the 31st of May, 1899, a jury was empaneled to try the issues. They rendered a verdict upon June 3, 1899, finding the issues for the defendants. Plaintiff filed a motion for a new trial. Thereafter, and upon the 19th day of February, 1900, an order was entered by the court, the material portions of which are as follows:

''Now, on this 19th day of February, 1900, this cause having heretofore and at the present term of

this court having been fully argued by the counsel of both parties, and taken under advisement by the court, and the court now being fully advised, and the same coming on for decision on the motion of the plaintiff for a decree in his behalf   *   *   *   .

"It is further ordered by the court that inasmuch as the jury heretofore called and empaneled to advise the court upon certain facts submitted to them had been erroneously instructed by the court, and that the court had failed to instruct said jury upon matters which they should have been fully instructed, did find an erroneous verdict, and such verdict so by said jury found, it is hereby ordered that the same be disregarded, and the court has found that all of the instruments mentioned in the complaint were made under duress and without consideration, was ordered that the attorneys for the plaintiff prepare a decree in this case embodying the findings of the court; and such decree having been so prepared was in open court read, and by the attorneys of said defendant excepted to, which exceptions were by the court overruled, and was then, in open court, signed by the court and ordered to be spread upon the judgment book."

Then follow motion for new trial by defendants, appellate orders and decree for plaintiff; to reverse which judgment error is brought to this court. The remaining facts sufficiently appear in the opinion.

Messrs. Teller & Dorsey, for plaintiffs in error.

Mr. Charles D. Hayt, Messrs. Morrison & De Soto and Messrs. Regennitter & Barker, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

Plaintiffs in error rely upon four propositions for the reversal of the judgment in this action, namely:

"First. The court erred in disregarding the verdict of the jury and in making findings and entering a decree contrary thereto.

."Second. The court erred in immediately making findings upon all of the issues in the case directly contrary to the verdict of the jury and in entering a decree thereon without granting to plaintiffs in error a·further opportunity to be heard as on a trial by the court.

"Third. The findings and decree of the court below were not only contrary to the verdict of the jury, but were not supported by the evidence and unconscionable.

"Fourth. The court erred in the admission and rejection of testimony."

In our judgment there is nothing in these several allegations of error. We shall consider them in the order in which they are presented in counsel's brief.

Taking the first two together, as to whether or not the court erred in disregarding the verdict and entering a decree contrary thereto, without granting plaintiffs in error a further opportunity to be heard as on a trial to the court: This action was purely equitable in its nature. It has none of the elements of an action at law. In such cases the verdict of the jury is merely advisory. The court may disregard it and decide the issue for itself on the evidence produced.—*Porter v. Grady,* 21 Colo. 74; *Peck v. Farnam,* 24 Colo. 141; *Wilson v. Ward,* 26 Colo. 39; *Buckers Irr. Co. v. Farmers' Ditch Co.,* 31 Colo. 62; *Abbott v. Monti,* 3 Colo. 562; *McGan v. O'Neil,* 5 Colo. 58; *Hall v. Linn,* 8 Colo. 264; *Kirtley v. Mining Co.,* 8 Colo. 279.; *Tabor v. Sullivan,* 12 Colo. 136.

The concurring opinion of Mr. Justice Elliot in the last mentioned case is cited by plaintiffs in error for the purpose of demonstrating that defendant in error had waived his right to trial by the court and was bound by the verdict of the jury. Justice Elliot said:

"Where parties allow, without objection, a jury to be sworn generally to try an action containing issues triable by the court, they should be held to have waived a trial by the court, *especially as it is always in the power of the court to order such issues to be tried by a jury. Verdicts in such cases may not have the same binding force as verdicts responsive to strictly legal issues.*" The intimation clearly being that the verdict is largely advisory, and may be set aside. At page 141 of the opinion by the court, it is said:

"Such findings are, under the present practice, not absolutely binding upon the court. They were in the case at bar merely advisory to the chancellor below, and this court is free to exercise great latitude in considering evidence received in support of the equitable issues involved, even though it may have been submitted to the jury."

Much of the argument of plaintiffs in error is devoted to the proposition that defendant in error (plaintiff below) having elected to treat the action as one at law, instead of one at equity, cannot now be heard to assert that it was equitable instead of legal, and that he is absolutely bound by the verdict of the jury. There is nothing in the record from which it appears that defendant in error at any time treated the action as one at law, except the fact that a jury was called to try the issues, without objection upon his part, and the fact that the jury was sworn generally to try the issues and render a general verdict. An objection to the calling of the jury might not have

been availing, because it is within the power of the court to call a jury to try any issue of fact, either legal or equitable, and to submit to such jury all questions of fact arising from the case.

The facts stated in the petition and the relief asked constitute a case in equity, and it is well settled that in such cases the verdict is merely advisory, and may be disregarded by the court.—*Coglan v. Beard,* 67 Cal. 303; *Wallace v. Maples,* 79 Cal. 433; *Adicks v. Lowry,* 12 S. C. 97.

While we have examined with great care the authorities presented by plaintiffs in error, we shall not attempt to review all of them, because it is well settled in this state that the verdicts of juries in such cases are purely advisory. Suffice it to say that practically all of the cases cited by plaintiffs in error recognize the right of the court to set aside the verdict. For instance, *Ross v. New England Ins. Co.,* 120 Mass. 117, recognizes the right of the court to set aside the verdict. So in *Franklin v. Greene,* 2 Allen 519.

In *Ex parte Morgan,* 2 Ch. D. 72, it is said by James, L. J.: ''I take the rule in chancery and bankruptcy with respect to verdicts of juries to have been substantially the same as in the common law courts, namely, that the finding must be considered as *res judicata,* conclusive between the parties, *unless and until it is set aside.* But in chancery and in bankruptcy the court has also substantially the same powers as the courts of common law had to pronounce a judgment *non obstante veredicto.* If, assuming the finding of the jury to be correct, that the fact or facts is or are as found by them, there are other facts or other considerations which enable the court to pass over that finding and to pronounce a decree or make an order adverse to the party who has obtained the

6

verdict, the court is entitled to pronounce such decree or make such order.''

In *Setzer v. Beale,* 19 W. Va. 274, it is said: ''After a verdict is rendered by a jury on an issue out of chancery, if, upon the proofs, as they stood at the hearing, an issue ought not to have been ordered, it is the duty of the chancellor, notwithstanding the verdict, to set aside the order directing the issue, and enter a decree on the merits as disclosed by the proofs on the hearing when the issue was ordered.''

In *Ivy v. Clawson,* 14 S. C. 272, the first exception of appellant was ''that the verdict of the jury should have been regarded as conclusive of the issue referred.'' The appellate court said: ''The judge sitting as chancellor is not required to regard the finding of the jury as conclusive of the fact submitted any more than he would the report of a referee, but, on the contrary, is bound to consider all the evidence in the whole case, including the finding and the evidence to support it, and pronounce his judgment accordingly.''

Citing many authorities, among which was $\dot{C}$. *C. & A. R. R. Co. v. Earle,* 12 S. C. 53, wherein the court says: ''The parties in what is commonly called an equity case have a right to the opinion of the circuit judge, notwithstanding his right to refer issues of fact to a jury for the purpose of enlightening his conscience, but the verdict of the jury is not to be accepted as the conclusion which is to govern and control the case, and through the medium of which the judgment is to be pronounced in favor of one side or the other.''

The case of *Stahl v. Gotzenberger,* 45 Wis. 123, which is likewise cited by plaintiffs in error, in many respects is similar to the one now before the court. A jury was drawn without question by either of the parties or by the judge, and after being sworn to try

the issues generally, and hearing the evidence, found a verdict directing judgment for plaintiffs. The clerk entered judgment on the verdict. There is nothing to show that the court passed on the facts.

The appellate court said: "When the jury have given their verdict, the case is then taken up by the court, and if the court is not satisfied with the findings of the jury he may, either upon the application of the party, or of his own mind, set aside such verdict and submit such issues to another jury, or, if he is satisfied that no aid will be obtained by such further submission, he may proceed to decide the issues without any further intervention of the jury. After a verdict has been rendered upon the issues submitted by the jury, the court hears the testimony on the other issues of the case, if any, and then upon all the testimony in the case, including that given upon the trial of the issues by the jury, disposes of the whole case."

That is exactly what has been done here. The testimony upon the entire case was presented before the jury. Neither party offered further proof, and the court very properly passed upon the case as made. If defendants below desired to introduce further testimony and treat the matter as a trial by the court, it was their duty to make such request.

In *McDonald v. Thompson,* 16 Colo. 13, the court rendered judgment *non obstante veredicto* without taking additional testimony.

*Vickers v. Buck Stove and Range Co.,* 68 Pac. 1081, is cited by plaintiffs in error as an authority for the proposition that where the court disregards the verdict of the jury it cannot thereafter arbitrarily determine the case itself without giving the parties a hearing of some kind to some extent before it as a court. The court in that case said: "It is not said that the court must permit a retrial of the case, but it

must allow the case to be presented anew, so far as to give it the substantial character and effect of a trial to the court. The record shows that 'defendants requested permission to present said case to the court as upon a trial to the court, which the court refused.' * * * As before said, the court, if dissatisfied with the jury's findings, should not be required to try the case *de novo,* but in all particulars in which a trial to the court differs from a trial to the jury the parties are entitled to a hearing before the court.''

In the case at bar, no request was made to present the matter anew to the court. There is nothing to show that the defendants therein had any additional testimony to offer. If they did not have it, or having it did not ask permission to present it, of course they were not in a position to complain.

The plaintiffs in error may not sit by and fail, refuse or neglect to exercise a right to introduce testimony, and then complain of the action of the court in not receiving that which was not tendered.

To procure a reversal, it must be shown that the court below committed error, and that the plaintiffs in error were not responsible for it.—*Perdew v. Creditors of Coffin's Estate,* 11 Colo. App. 157; *Martin v. Force,* 3 Colo. 199; *Denver v. Stein,* 25 Colo. 125; *Tucker v. Parks,* 7 Colo. 62.

In the order setting aside the verdict it is said: ''Inasmuch as the jury heretofore called and empaneled to advise the court upon certain facts submitted to them have been erroneously instructed by the court, and that the court had failed to instruct said jury upon matters which they should have been fully instructed did find an erroneous verdict, and such verdict was by said jury found, it is hereby ordered that the same be disregarded.''

Plaintiffs in error failed to bring before us the instructions given by the court to the jury, so that we

cannot determine whether or not they were erroneous or insufficient; and they do not now contend that the trial court labored under a mistake when it found that it had erroneously and insufficiently instructed the jury. We therefore conclude that the jury were erroneously and insufficiently instructed.

As to the third proposition of plaintiffs in error, viz., that the findings and decree by the court below were not only contrary to the verdict of the jury, but were unsupported by the evidence and unconscionable, it will be observed that, under the pleadings, defendants admit that the several checks, deeds, notes and mortgages were made without consideration—that is, defendants McClelland and Mary Morris only deny the second paragraph of the complaint, leaving the remainder of the petition unanswered.

"The answer of the defendant shall contain: First, a general or specific denial of each material allegation in the complaint intended to be controverted by the defendant."—Sec. 56, Code of Civil Procedure.

"An answer must be responsive to the bill to properly raise a triable issue."—*San Juan etc. Co. v. Finch,* 6 Colo. 214.

Denials should be so specific as to clearly and unequivocally indicate what the pleader intends to deny.—*D. & N. O. Construction Co. v. Stout,* 8 Colo. 61.

The other defendant in the affidavit filed by her in support of her motion to strike from the files the joint answer of herself and Mary Morris says: "That in said answer she is represented as alleging and claiming that the plaintiff in this cause seriously and permanently injured her by the commission of certain wrongs against her and said defendant Mary Morris, and that, in consideration of and to repair the said injuries and wrongs, said plaintiff made a

certain agreement with her; that the foregoing allegations of said pretended joint answer and other allegations therein contained are untrue; that she has not been so injured; that said wrongs have not been committed, and that no such agreement as that alleged in said pretended joint answer to have been entered into by said plaintiff was ever made."

She then filed her separate answer, wherein she alleges that she never received the note alleged in the complaint to have been made payable to her, and there was no consideration for the execution of the note or mortgage; that her codefendants were not authorized by her to demand or receive any such note or mortgage; and that all things done by her codefendants in so far as the same purported to have been done in her behalf, on her account or for her benefit were done without any request or license on her part.

It appears from the record that she was subpoenaed as a witness on behalf of plaintiffs in error. She was not called by them and we must therefore consider that her affidavit and answer were true and the facts were substantially as stated therein and in so much of the complaint as is admitted by defendants, because of their failure to deny the same.

If defendant in error injured her as alleged in the several writings, he and she and each of them must have had knowledge of the fact; yet they both deny it upon their oaths, and no person is heard to aver to the contrary. If there was no injury, no recompense could be required. It therefore clearly appears that there was no consideration for the execution of the several instruments. The only matter which was triable was that of duress. Plaintiffs in error insist that the duress was not proven because, forsooth, defendant in error is the only witness who testifies to the making of threats and as

to the imprisonment, while, upon the other hand, McClelland and the two Morrises testified that there was no imprisonment and no. threats.  There being three witnesses testifying in the negative and only one in the affirmative, it is said the three must be believed.  If the rule is as contended for by plaintiffs in error, three conspirators might at any time enter the office or domicile of an innocent man and compel him by force, threats, intimidation or the like to acknowledge that he was guilty of the most heinous offenses, or part with the most valuable property and then when he, as soon as he was relieved from the duress or intimidation, repudiates the entire transaction and brings suit to recover that which he parted with, they, with one voice, can proclaim that no such thing occurred.  They numbering three and he but one, and a majority of witnesses creating the weight of evidence, the innocent would be made to suffer and the wrong-doer obtain profit thereby, notwithstanding the fact that the cause of the one was just. and the cause of the three unjust.  This, however, is not the law.

"The weight of the evidence does not wholly consist of its volume nor in the number of witnesses sworn."—*Green, Administratrix, v. Taney,* 7 Colo. 278.

Yet, the testimony of defendant in error is somewhat supported by the testimony of his stenographer, who was in the adjoining room and overheard a portion of the conversation.  He is further corroborated by the circumstances of the entire transaction.  The defendant in error was of mature years; he had a wife and a family whom he was bound to protect. He had a lucrative practice as a lawyer, and had accumulated some property.  He was held in high repute among his neighbors and friends.  He apparently had no knowledge of the contemplated visit

of McClelland, the two Morrises and their friend
and advisor, Mr. Sabin. Yet, according to their
testimony, he willingly, freely, voluntarily and gra-
ciously sacrificed his domestic happiness and his
reputation as a decent citizen, and also made, exe-
cuted and delivered unto them a deed for a fourth
interest in two mining claims; a check for one thou-
sand dollars to E. M. Sabin; a check for five hun-
dred dollars to defendant McClelland; a check for
two hundred dollars to Dr. Bagot; a check for two
hundred dollars to Dr. Atcheson; a note for two
thousand dollars to Mary Morris, secured upon his
law library and office furniture; a note for twenty-
one hundred dollars to..........., with mortgage
securing the payment of same; a receipt to McClel-
land for fifty dollars, which amount was then owing
by McClelland to defendant in error; thus sacrificing
the result of the labor of a lifetime, and all of this
in reparation for an alleged injury to...........
which she says, and he says, was never perpetrated,
which could not have been accomplished without their
knowledge, and which plaintiffs in error in their
pleadings in this action do not aver was ever com-
mitted. Add to this the further facts which appear
from the record; that the party who was injured, if
any, received no portion of the money and that the
note made payable to her was never delivered to her
but remained in the hands of McClelland; that she
received none of the benefits of the transaction, and
that these people were acting without authority or
license from her, and we can scarcely say that the
trial court erred in finding positively and affirma-
tively that the several instruments were executed
without consideration and that they were executed
under duress. The court saw the witnesses, heard
the testimony and was as fully advised as to the

cricumstances surrounding the occurrence as a judge presiding at the trial could be. The decree being supported by legal and competent evidence will not be disturbed.

The other objection made by plaintiffs in error is that the district court erred in the rejection and admission of testimony.

Plaintiffs in error asked defendant in error the following question, upon cross-examination:

"Did you at any time tell Mr. Regennitter that you had ruined............, and if so, when did you tell him?"

This was objected to and the objection sustained. This question was immaterial and improper. It was not alleged in any of the pleadings that the instruments in question were executed by defendant in error because of his circulating false reports in relation to............and, as we have seen, it was admitted in the pleadings that there was no truth in the charges.

The other questions were propounded by defendant in error to certain witnesses for the purpose of showing the appearance of the defendant in error shortly after the alleged imprisonment and duress. It appears from the testimony that immediately after the execution of these several instruments he was confined to his bed because of a shock to his nervous system, and any testimony which would tend to show the mental condition of the party immediately after the transaction was material.

Perceiving no error in the record, the judgment will be affirmed.

*Affirmed.*

Chief Justice Gabbert and Mr. Justice Goddard concur.