BRUENING v. DORR ET AL.

WATER RIGHTS—PERCOLATING WATER—SPRINGS.

Percolating water existing in the earth belongs to the soil, is a part of the realty and may be used and controlled to the same extent by the land owner, but the owner of land on which a spring rises has no right to divert the water flowing therefrom to the prejudice of a prior appropriator of water from a stream naturally fed thereby.

*Error to the District Court of El Paso County.*

THIS is an action brought to restrain the unlawful diversion of certain water claimed by defendants in error by virtue of a prior appropriation. The complaint, *inter alia*, avers:

"That plaintiffs are the owners and in possession of a certain water ditch in said county of El Paso and state of Colorado, generally known as the 'Robbins Ditch,' that commences and heads in a natural stream or water course known as and called 'Cheyenne Slough;' * * * and was constructed about April 1st, 1868. * * * That said Cheyenne slough is formed from natural springs that flow naturally down into the creek bed of said slough, and from rainfall and the waste irrigation waters from lands above said slough. That said springs have existed from time immemorial, and are the main source of the water supply in times of drouth, and flow naturally into the creek bed of said slough ; which is, and ever has been, a natural watercourse, or stream, in which flows a current of water in a natural channel between well defined banks; and that the current of water flowing therein is, and ever has been, constant and continuous, and is one of the tributaries to Cheyenne creek. * * * That

plaintiffs and their predecessors have at all times when necessary to supply their ditch with water to its capacity, dammed the natural bed of said creek and taken all the water from said springs through said creek for the purpose of irrigation and domestic purposes. * * * That this right covers all the waters in said springs and said slough, when necessary to fill the capacity and water rights of said Robbins ditch."

And further alleges, in substance, that in a proceeding duly instituted in the district court of El Paso county for the adjudication of priority of water rights between ditches taking water from said Cheyenne slough, the plaintiff's ditch was awarded the first priority of water to its full capacity from the waters of said slough. Avers that on or about the 21st day of November, 1888, the defendant Bruening made subsequent appropriations of water from said Cheyenne slough, its tributaries and natural springs, which were subject to the prior rights of the Robbins ditch, and filed the same as the "Younger Spring Ditch;" and on the 15th day of June, 1889, made another appropriation of the water as "Younger Spring Ditch enlargement;" whereby the waters of said slough are being diverted and carried out of their usual and accustomed channel, so that they no longer flow into the Robbins ditch. By means of said Younger Spring ditch the defendant is now taking, and at different times since 1888 has taken, diverted and appropriated the natural spring waters of said Cheyenne slough, the property of plaintiffs, and which said plaintiffs are entitled to have flow down the channel of said creek into their ditch. That the ditch constructed by defendant is a permanent structure, and that he threatens and intends to continue to divert said waters, and will permanently divert the same, and prevent it from flowing into plaintiffs' ditch, unless restrained. That by reason of such diversion the plaintiffs were unable to irrigate their growing crops during part of the years 1888, 1889 and 1890, and were greatly damaged thereby.

By his answer the defendant specifically denies the allegations of the complaint, and by way of a special defense avers

that by and through his Younger ditch he takes the water of springs which rise upon his own land, and conveys them for irrigation purposes upon his own land. On the trial of the cause a jury was impaneled to assist the court in the determination of the facts involved, and by agreement of the parties were placed in charge of a sworn bailiff and permitted to view the premises; and to which certain interrogatories were submitted. These interrogatories, and the answers thereto, together with the general verdict returned, are as follows:

" Q. First. Is the spring in question one of the natural sources of supplies for the waters of said stream? A. Yes.

" Q. Did the construction of the Younger Spring ditch and the manner of its use diminish supply of water of said stream at a point above plaintiff's headgate for year 1889? A. Yes.

" Q. Has the water supply of said stream been increased by the construction of the reservoirs of the defendant; if so, in what proportion? A. No.

" Q. Did the opening of the spring and the construction of the reservoirs as they now exist increase the flow of water from said spring? If so, you will state by your verdict in what proportion. A. No increase.

" We, the jury, find the issues joined in favor of the plaintiff and against the defendant, and assess his damages at $5.00."

The court below found the issues in favor of plaintiffs and rendered a decree enjoining the defendant from diverting the waters flowing from the springs in question, and from preventing their flow into the Cheyenne slough to the extent of the amount of the prior water right of the Robbins ditch. Error is assigned upon this finding and decree, and to the giving of the following instruction:

" The court instructs the jury that the natural supply of water of a stream, including seepage from springs therein and adjacent thereto, the waters of which flow or seep into said stream, become the property of the first appropriator of water from said stream, without regard to the owner of the

land upon which such spring is located. This at least would be the law as to all appropriators of water from a stream fed by springs prior to the 17th day of April, 1889, or ninety days thereafter."

Mr. T. A. McMORRIS, for plaintiff in error.

Mr. J. M. DORR, Mr. J. K. GOUDY and Mr. V. A. ELLIOTT, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The principal questions of fact in issue, and upon which evidence was mainly introduced, were whether the source of the water in controversy consisted of springs, or only a bog or swampy piece of ground, and whether there was a natural stream flowing therefrom into the creek or slough, or simply a seepage or percolation of water through the intervening soil; the contention of plaintiff in error being that if a spring is not fed by a visible stream of water flowing from beyond into it, but from water arising out of the earth, and is without an outlet through any definite channel, that such water is no part of any natural stream, but is the property of the owner of the land upon which it stands, and not the subject of appropriation under the constitution and statutes of this state; and that no matter if, by percolation or seepage, the water passes into and constitutes the source and supply of a natural stream, an appropriator from such natural stream obtains no right to the water that will prevent the owner of the land from diverting it for his own use.

In support of this claim he relies upon the well recognized doctrine that percolating water, existing in the earth, belongs to the soil, is a part of the realty, and may be used and controlled to the same extent by the owner of the land. But we cannot perceive the applicability of this principle to the facts in this case. The reasons that exempt percolating waters from the rule of law that controls waters running in

well defined channels are not disclosed thereby. There is no uncertainty as to the existence, quantity and flow of the water in question, whether it passes through or over the intervening land. It appears from the evidence, and the express finding of the jury, that the spring in question is one of the natural sources of and furnishes a continuous and regular supply to the stream that flows down Cheyenne slough; and its waters constitute a portion of the water right acquired by plaintiffs, through their prior appropriation from that slough; and there is evidence on the part of plaintiff to the effect that the water flows from the spring in a well defined channel.

Mr. Dorr testified:

"The main spring was * * * quite a large spring. It looked like it ran about two feet wide and two or three inches deep, and flowed about twenty-five feet into the creek. As to banks that contained the water, from the spring into the creek, there was a depression filled with big rock, a depression of about two feet below what was the bed of the valley that the spring flowed in from its source into the creek bed."

Mr. Wolfe, on behalf of plaintiff, testified:

"The spring had no banks when I first saw it; just came out and ran down over the rocks and gravel then. The water ran down into a kind of ravine. It was a little channel."

Mr. Matthews testified:

"The springs seemed to be in a kind of marshy or springy piece of ground. Right along the hill above this creek or slough, and between this and the slough, was a hard piece of ground where the water did not seem to go through at all, but seemed to collect higher than the spring, and come down for a short distance; then there was a small depression where it ran into the slough. The stream was, as near as I can recollect, perhaps nearly a foot wide, and perhaps two or three inches deep in the center, where it was running down; and at other places, it would seep out along the bank into the creek. The pitch of the stream was quite rapid. It ran quite rapid."

While there is testimony somewhat contradictory in that some of the witnesses state that the water passes from the spring or bog into the stream by seepage through the ground, and not over the surface, yet the weight of testimony clearly sustains the averment of the complaint, that a portion of the supply of the water of Cheyenne slough comes from these springs, and flows naturally down into the creek bed of said slough. But if it be assumed that the conditions are as claimed by plaintiff in error, and that the water passes from where it heads in the spring or bog by seepage into the slough, we find in none of the decisions cited any rule announced that would warrant defendant in diverting the same to his own use, as he has undertaken to do. Nearly all the cases in which the diversion of percolating water has been upheld are cases where the diversion was incidental to the legitimate use of the land, in digging wells, working mines, etc., and not the result of a direct intent to cause such diversion. The only exception we have found is the case of *The Southern Pac. Ry. Co. v. Defour*, 95 Cal. 615, which, in its facts, is clearly distinguishable from the case under consideration. The facts of that case were, in brief, that the railway company in 1880 made an excavation or reservoir in a marsh, situated on land then belonging to the state, and by a pipe conveyed the water that collected therein to its station, and applied it to the various uses of the company. In 1888, Defour acquired title to the land. He made a tunnel into an adjoining hill, and dug a ditch in connection therewith upon this land for the purpose of procuring water for irrigation and for his sheep. This act on his part resulted in the water collecting in his ditch, and the plaintiff's reservoir becoming dry. Action was brought to restrain the defendant from diverting this water. The court below expressly found " that said spring [reservoir] in the complaint described was, on the 7th day of October, 1886, and for a long period of time prior to that date, and ever since such date has been and now is, fed solely by percolating waters which seep into said spring from the swamp or wet land surrounding the

same, and such spring is not, and never has been, fed by any running stream of water."

The supreme court, after setting forth this finding, says:

"The finding is amply supported by the evidence, which clearly indicates that no stream of water runs into or from the bog or spring other than is conveyed away through plaintiff's pipe line."

And after discussing the law applicable to percolating water, the court uses this language:

"Considered alone, this finding is not sufficient; * * * for it is not inconsistent with the fact that a natural stream of water flowed from the spring, which might be the subject of appropriation. But the finding that the spring was fed by percolating waters, taken in connection with the additional finding that the digging of the trench or ditch by defendant was for useful purposes, upon his own land, and *above* the spring, inflexibly directs the course of the judgment to the respondent. * * * If respondent's alleged diversion had been located by appellant at a point below the spring and upon a natural stream flowing therefrom, then the principle of law involved would have been entirely different from that now presented."

The court also cites approvingly *The Trustees of Delhi v. Yoemans*, 50 Barb. 16. In that case it is expressly said:

"If the defendant's excavation or ditch drew the water *from* the plaintiff's spring, instead of stopping the flow of water from defendant's land *to* such spring, then the defendant would be liable in this action."

In the case before us it is undisputed that the defendant's diversion of the water was made directly from the springs by excavations made therein, and by a trench leading therefrom, and for the express purpose of appropriating the same to the irrigation of his own land. We cannot find any case wherein such diversion is justified. *Strait v. Brown*, 16 Nev. 317, involved facts very similar to those in the case before us; and it was therein held that the law of percolating waters was not applicable, and the court say:

"It would be a mere pretense of protection of the rights acquired by the earlier appropriators of the waters of a creek to say that later appropriators could lawfully acquire rights to the springs which constitute the source of the creek, simply because the means by which the waters are conveyed from the springs to the creek are subterranean, and not well understood."

The further contention of defendant that there was an increased flow of water caused by the excavations he made in the spring, to which he was entitled, is answered by the finding of the jury, which, being based upon conflicting testimony, and a personal examination of the premises, is conclusive of that fact upon this review. Our conclusion is that the court below correctly stated the law in its direction to the jury, and rightly granted the injunction. The decree is accordingly affirmed.

*Affirmed.*