[No. 4541.]

## CLARK ET AL. v. ASHLEY ET AL.

34    285
35    109

**1.   Water Rights—Wrongful Diversion—Injunction.**

In an action by a prior appropriator of water to enjoin a subsequent appropriator from wrongfully diverting water from the stream it is no defense to the action to show that there are enough priorities ahead of plaintiff's to exhaust the entire water of the stream even if the water diverted by defendant be permitted to flow therein.

**2.   Water Rights—Adverse User—Prescriptive Right.**

To establish a prescriptive right to the use of water by adverse possession and user for twenty years, the adverse user by which the right is sought to be established must have been such as to notify the person against whom it is asserted that his water was being taken and used adversely, and he must have acquiesced in such adverse user and made no claim to it during the period.

**3.   Water Rights—Color of Title—Adverse User.**

To support a claim of right to the use of water by adverse and exclusive possession and use and payment of taxes for the period of seven years under color of title, the color of title must be based upon a paper title conveying the water rights. Color of title to the use of water from springs based upon a patent to the land including the springs cannot avail against one who has a decree awarding him the right to the use of the water under a prior appropriation.

**4.   Water Rights—Springs—Seepage.**

Where one of the sources of the water of a creek is a spring, the fact that the volume of the water of the spring has been increased by seepage from irrigated lands above does not entitle the owner of the land including the spring to divert the water of the spring to the injury of prior appropriators of water from the creek.

**5.   Same.**

The law of 1889 (Session Laws 1889, page 215) relative to appropriation of seepage and spring water is not applicable to the water of a spring which constitutes the source of one of the branches of a natural stream the water of which had been appropriated prior to the enactment of the law.

*Appeal from the District Court of Saguache County:*
*Hon. Charles C. Holbrook, Judge.*

Mr. IRA J. BLOOMFIELD, for appellants.

Mr. JOHN W. DAVIDSON and Mr. W. E. Cox, for appellees.

Mr. JUSTICE STEELE delivered the opinion of the court.

An adjudication of priorities to the use of water in water district No. 26 was had in the district court of Saguache county, the final decree being entered in the year 1889. This decree confirmed to Ashley and his associates appropriations made by them of the water of Saguache creek and its tributaries. The appropriations were made during the years 1871 and 1872. In the year 1877, John F. Schaller entered certain lands in Saguache county on which springs known as the Schaller springs rise. In the adjudication Schaller appeared, offered proof, and obtained decrees for the ditches known as the Schaller ditch No. 1 and the Schaller ditch No. 2. He also claimed the water of the Schaller springs, but no adjudication was made with reference thereto. The decrees granted Schaller are later than those granted Ashley and his associates. The Clarks are owners of the lands where the springs rise through mesne conveyances from Schaller. Claiming that the water of these springs have always flowed in a well-defined channel from where they rise into Saguache creek, and that the water flowing from the springs is known as the Schaller Springs Branch of Saguache creek and is one of the tributaries of Saguache creek, that the Clarks were using the water without right or authority of law and in violation of prior rights, Ashley and his associates secured a temporary injunction in the district court of Saguache county. Demurrer to the complaint was overruled. In the answer the defendants aver that the water that flows from the vicinity of the springs is composed partly of water from

the springs and partly of seepage water coming from irrigated lands above the springs; that if the water from the springs were turned into the channel of the creek no part thereof could or would flow to or enter the head gates of plaintiffs, or either of them, because persons other than the plaintiffs would be entitled to use the water; that for more than twenty years they have been using all of the water flowing from the springs for irrigating land owned by them, and that their possession has been open, notorious and well known to the defendants; and in a separate defense set up that for more than seven years prior to the commencement of the suit the defendants and their grantors have openly, notoriously and exclusively, with the full knowledge of the plaintiffs, owned, used and had the actual possession of the lands mentioned, including the water so rising from such springs and seepage, under claim and color of title thereto made in good faith, and have continuously,. with the knowledge of plaintiffs, used the said water for the irrigation of their lands, and have, during said time, paid all taxes legally assessed upon said land, water and water rights so constituting a part of said land, being the same springs and spring water mentioned in plaintiffs' complaint. A demurrer was interposed to the separate defense and was sustained. The defendants elected to stand by the separate defense.

The court, it is alleged, erred in overruling the demurrer to the complaint, and in sustaining the demurrer to the separate defense, and in holding that the plea of twenty years' possession had not been sustained, and in rendering judgment for plaintiffs when it appeared that the plaintiffs were not injured and could not be benefited by the granting of the injunction.

It was shown that priorities ahead of the plaintiffs' exhausted the entire water of the stream, but it does not follow that plaintiffs would not receive benefit from the issuance of the injunction. If the defendants were wrongfully appropriating water, they should not have been permitted to continue to do so; because, although the priorities senior to the plaintiffs' call for more water than went into the stream, if the water taken by the defendants were allowed to flow into the stream plaintiffs would receive water much sooner than they otherwise would.

Many cases are cited by the appellants in support of their contention that "The right to use water for irrigation may be acquired, not only by original appropriation or by grant, but also against individuals in whom the right is vested, by adverse possession and use." The proposition has the support of many adjudicated cases. Although it appeared at the trial that the defendants and their grantors had used the water from the springs for irrigation for twenty years or more, there was no proof that such use of water was with the plaintiffs' knowledge that their rights were being invaded by such use.

"The acts by which it is sought to establish the prescriptive right must be such as to operate as an invasion of the right of the person against whom the prescriptive right is asserted, and will give a cause of action in his favor. No adverse user can be initiated until the owners of the water right are deprived of the benefit of its use in such a substantial manner as to notify them that their water rights are being invaded."—Long on Irrigation, § 90.

This prescriptive title is based upon the presumption that if water has been used for so long a period adversely and without interruption that a grant of it was made. But such right cannot be acquired unless the person whose water is taken

acquiesced in the taking and made no claim to it during the period. The complaint alleges and the answer admits that the plaintiffs (appellees here) have demanded at all times the entire body of water flowing in said creek and its tributaries above them to supply their priorities. It appears with sufficient clearness from the pleadings and the testimony that the plaintiffs within twenty years prior to the filing of the complaint have had the use of the water awarded them by the decree. Under such circumstances the claim of title by prescription must fail.

"The riparian proprietor against whom adverse possession is held must have had knowledge or means of knowledge of such occupation and claim of right. The appropriator must have proof of possession for the statutory period with proof of an adverse claim against the proprietor, as without proof of adverse claim his plea will not avail."—Kinney on Irrigation, § 295.

"Rights of a prior appropriator may be lost by his acquiescence in an adverse use thereof by another, continued uninterruptedly for the statutory period. This, however, will not apply to any portion of said water which the prior appropriator did within said period resume and afterwards retain possession of."—Kinney on Irrigation, § 256.

The separate defense is framed so as to include the spring and the water as part of the land, and it alleges possession under color of title and the payment of taxes for the period of seven years.

In passing upon a similar question, this court, in *L. L. Ditch Co. v. Louden I. C. Co.,* 27 Colo. 267, said: "It is not necessary to determine  *  *  * whether or not the statute is applicable to water rights, as the evidence fails to disclose that defendants have a paper title such as the statute requires upon which to base their claim to the use of the waters

from the Big Thompson, as against the rights of plaintiff. Color of title under the statute must be based upon a paper title."

The color of title pleaded is that based upon a patent from the government to Schaller, and through him by mesne conveyances to the defendants. This cannot avail against one who has a decree awarding him water under a prior appropriation. He should plead a paper title conveying the water rights, and he offers no defense when he pleads title to the land simply.

There was evidence tending to show that the water in the springs flowed over the surface of the earth in a well-defined channel to Saguache creek and that the springs in question were one of the sources of the creek; and it was upon the theory that the springs were one of the sources of Saguache creek that the court denied the defendants the right to use the water therefrom when such use interfered with prior appropriations. This ruling is in accord with the decisions of this court. In the case of *Bruening v. Dorr*, 23 Colo. 195, this court, quoting from a Nevada case, said: "It would be a mere pretense of protection of the rights acquired by the earlier appropriators of the waters of a creek to say that later appropriators could lawfully acquire rights to the springs which constitute the source of the creek, simply bacause the means by which the waters are conveyed by the springs to the creek are subterranean and not well understood."

There was testimony that the volume of the springs had been increased by seepage from irrigated lands above them. This, if true, would not entitle the defendants to divert the spring water. The spring is one of the sources of the creek and it makes no difference, it seems to us, that the volume has been increased by the irrigation of land above.

We shall not undertake to consider the law of 1889, referred to (Laws of 1889, p. 215), further than to say that it can have no application to this case, because the spring water claimed is the source of one of the branches of a natural stream the water of which had been appropriated prior to the enactment of the law.

For the reasons given, the judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMPBELL concur.