## No. 27123

**Thomas H. Benson, Robert Phillips, and Roger Phillips v. Herschel G. Burgess, Jr., and Ralph W. Kelling, Division Engineer, Water Division No. 4**

(561 P.2d 11)

Decided March 14, 1977.

Willett & Trupp, Charles F. Willett, for appellants.

Brown and Brown, A. Allen Brown, for appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This review concerns the rights to water in the P. & S. Ditch. On December 1, 1971 the water judge entered a decree to the P. & S. Ditch for 2.7 cubic feet of water per second of time (c.f.s.) for irrigation purposes with an appropriation date of August 1, 1904. This decree was predicated upon findings that the source of water was the "result of diversion from Surface Creek primarily by the Lone Pine Ditch and by the Cedar Mesa Ditch." In 1975 the same water judge entered a decree which changed the stated source of water to "Coryell Gulch, which is a tributary of Currant Creek, which is a tributary of the Gunnison River." The appellants, being the owners of the P. & S. Ditch, seek review of the latter decree. We affirm.

Two creeks have their headwaters in Delta County on the south slope of Grand Mesa, that beauteous and magnificent wonder of the world, being the largest flattop mountain in the world with an altitude in excess of 10,000 feet. These streams are Surface Creek and Currant Creek (also called Dry Creek), each of which wends its separate way in a southerly direction to the Gunnison River.[1] They run roughly parallel to each other. Surface Creek's confluence with the river is downstream and westerly from the point at which Currant Creek empties into the river.

Prior to the turn of the century two irrigation ditches were constructed with points of diversion from Surface Creek. These were the Cedar Mesa Ditch and the Lone Pine Ditch. Since their construction, water from these ditches has been used in the irrigation of land on Cedar Mesa. The return flow (underground percolation) and waste water from this irrigation of Cedar Mesa proceeds to Coryell Gulch, which as mentioned is a tributary of Currant Creek.

Prior to 1900 there also was constructed the Gallant Ditch, taking water out of Currant Creek downstream from the point where Coryell Gulch joins it. The Gallant Ditch has transported water during the irrigation season since its construction. The Gallant Ditch and water adjudicated thereto are the property of the appellee Burgess, hereinafter referred to as "appellee."

---

[1] Not too far upstream is another world wonder, the Black Canyon of the Gunnison.

In 1907 and 1908 decrees were entered adjudicating the priorities of the Cedar Mesa, Lone Pine and Gallant ditches.

Construction of a fourth ditch, the P. & S. Ditch, whose source of irrigation water is from Coryell Gulch, commenced in 1904; and a statement of claim thereto was filed in the office of the County Clerk and Recorder of Delta County, Colorado in 1907. No adjudication with respect to the P. & S. Ditch, however, was commenced until the appellants, the then owners thereof, filed an application in the above styled water division of the district court on July 20, 1971. After hearing, the 1971 decree was entered.

As stated in the first paragraph of this opinion there were findings in the 1971 decree that the source of water was the result of diversion of Surface Creek, primarily from the Cedar Mesa Ditch and the Lone Pine Ditch. The decretal portion provided that "the P. & S. Ditch is APPROVED AND GRANTED an ABSOLUTE DECREE, not to exceed 2.7 c.f.s. of water for irrigation purposes with an appropriation date of Aug. 1, 1904."[2]

On at least one occasion prior to the adjudication proceedings, the water officials considered that the P. & S. Ditch took water out of Coryell Gulch and on August 4, 1970 terminated its flow on a call by the Gallant Ditch.[3] Water officials construed the 1971 decree as an appropriation from Coryell Gulch and on August 15, 1972, on call by the Gallant Ditch, again shut off the water flowing into the P. & S. Ditch. The appellant returned to the water court and on December 29, 1972 obtained an amended decree which simply added to the above quoted decretal portion the words "out of Surface Creek" as emphasized in the following:

"[T]he P. & S. Ditch is APPROVED AND GRANTED an ABSOLUTE DECREE *out of Surface Creek*, not to exceed 2.7 c.f.s. of water for irrigation purposes with an appropriation date of Aug. 1, 1904." (Emphasis added)

In July, 1974 an official in the State Engineer's office concluded that the water from the P. & S. Ditch was adjudicated out of Surface Creek and, therefore, the Gallant Ditch was not entitled to priority over the P. & S. Ditch water. In August, 1974 counsel for the appellee protested this ruling to the State Engineer and again made a protest the following October. On March 17, 1975 the appellee filed his petition to modify the December,

---

[2] To the uninitiated, it may be stated that the priority of the most recent appropriation date in a decree is superior to a much earlier appropriation date contained in a decree entered subsequently. In other words, the priority of the P. & S. Ditch is junior to the priority of the Gallant Ditch if their diversions are from the same stream and its tributaries.

[3] This means that water in Currant Creek was not sufficient to supply the Gallant Ditch with the water to which it was decreed and, on request of the owner of the Gallant Ditch, the water officials closed the headgate of the P. & S. Ditch in order that the water flowing in Coryell Draw might proceed to Currant Creek and into the headgate of the Gallant Ditch.

1972 decree and to order that the priority of the Gallant Ditch be declared superior to that of the P. & S. Ditch. The appeal here is from the ruling of the water judge made after he heard the petition for modification.

It is undenied that the appellee did not have knowledge that the decree for the P. & S. Ditch was for waters of Surface Creek until July 1974. Following the filing of the original application by appellants on July 20, 1971, on August 9, 1971, pursuant to statute,[4] the clerk of the water court caused to be published in the Delta County Independent, a newspaper of general circulation, the resume of the application. This read as follows:

"Case No. W-333, THOMAS H. BENSON, ROBERT PHILLIPS, AND ROGER PHILLIPS, Cedaredge, Colorado 81413, P. & S. DITCH, also known as P. S. DITCH, located at a point whence the section corner common to Sections 4, 3, 9, 10 Township 14 South, Range 94 West of the 6th P. M., bears South 70 degrees 05' West 4,884.6 feet, Delta County, Colorado; decree for 2.7 c.f.s., with priority date of August, 1904, for irrigation purposes only."

It is to be noted that nothing in the resume gave any hint that the owners of the P. & S. Ditch were claiming water for it out of Surface Creek. Rather, it described a point of diversion on Coryell Gulch, the tributary to Currant Creek.

In August, 1975, the Lone Pine Ditch Reservoir Company and the Cedar Mesa Ditch Company each executed a "Relinquishment." These provided that the two companies relinquished and quit claimed to the owners of the P. & S. Ditch all waters collected by or diverted into the P. & S. Ditch "out of Coryell Gulch." They further provided that it was recognized that the source of the P. & S. Ditch water was from waste water and return flow from irrigation of lands by "Cedar Mesa Ditch water" and "Lone Pine Ditch water" "diverted out of Surface Creek . . . to those lands."

Section 37-92-304(10) provides in part:

"Clerical mistakes in said judgment and decree may be corrected by the water judge on his own initiative or on the petition of any person, and substantive errors therein may be corrected by the water judge on the

---

[4] Our statute provides:

"(a) Not later than the fifteenth day of each month, the water clerk shall prepare a resume of all applications in the water division which have been filed in his office during the preceding month. The resume shall give the name and address of the applicant, a description of the water right or conditional water right involved, and a description of the ruling sought.

"(b) Not later than the end of such month, the water clerk shall cause such publication to be made of each resume or portion thereof in a newspaper or newspapers as is necessary to obtain general circulation once in every county affected, as determined by the water judge.

"(c) Not later than the end of such month, a copy of such resume shall be mailed to each person who the referee has reason to believe would be affected or who has requested the same by submitting his name and address to the water clerk. . . ." Section 37-92-302(3), C.R.S. 1973.

petition of any person whose rights have been *adversely affected* thereby and a showing satisfactory to the water judge that such person, *due to mistake, inadvertence, or excusable neglect*, failed to file a protest with the water clerk within the time specified in this section. Any petition referred to in the preceding sentence shall be *filed* with the water clerk *within three years* after the date of the entry of said judgment and decree. . . ." (Emphasis added)

March 17, 1975, the date upon which the appellee filed his petition to modify the decree, was more than three years following the entry of the decree on December 1, 1971, but less than three years subsequent to the entry of the amended decree on December 29, 1972.

As stated at the beginning of this opinion, the water judge's 1975 decree, which is now before us, changed the source of P. & S. Ditch water to "Coryell Gulch, which is a tributary of Currant Creek . . . ." The appellants ask reversal on three grounds:

1. The appellee failed to show that his rights had been "adversely affected" and failed to show that his failure to protest the previous decrees was due to mistake, inadvertence or excusable neglect.

2. The three-year statute of limitations barred the appellee from seeking relief.

3. By reason of 65 years of use of P. & S. Ditch, the relinquishments obtained in 1975 and the fact that the P. & S. Ditch water was imported by transbasin diversion, the original decrees awarding water to the P. & S. Ditch out of Surface Creek were correct.

■ The incorrectness of arguments 1 and 2 is demonstrated in large part by the foregoing statement of the facts. We rule with respect to the third argument that the appellant could not acquire rights by reason of 65 years' use nor by the "relinquishments." This being the case, it follows that the findings in the first decree could not be the basis for a ruling that the P. & S. Ditch water was appropriated from Surface Creek. It further follows that the express addition in the decretal portion of the amended decree, making this an appropriation out of Surface Creek, was indeed a substantive matter. It was not a correction of a mere clerical mistake.

The contention that the appellee was not adversely affected by the amended decree is completely without merit for reasons we need not reiterate. Since the resume gave no inkling of appellant's position and the appellee did not have knowledge of this position until action by the water official in the summer of 1974, the court's finding that failure to protest was due to mistake, inadvertence or excusable neglect was entirely correct.

■ It is plainly inferable from the water judge's findings that he found the evidence did not support rights in the appellants gained by adverse use or prescription. We agree with the water court in this respect. *See Granby Co. v. Hallenbeck*, 127 Colo. 236, 255 P.2d 965 (1953).

The appellants rely heavily upon *Denver v. Fulton Irrig. Ditch Co.,* 179 Colo. 47, 506 P.2d 144 (1972), to support their contention that this is imported water and they are entitled to a decree out of the stream from whence it first came. *Fulton* and this case are readily distinguishable. *Fulton* involved water which had been transmoutain diverted from the Colorado River basin (whose water flows to the Pacific Ocean) to the South Platte River basin (whose water flows to the Missouri River and ultimately to the Gulf of Mexico). Denver uses this water for municipal purposes, recapturing in its sewer systems that portion not consumptively used. The questions involved in that declaratory judgment case were (1) whether Denver could make successive uses of the diverted transmountain water "while its dominion over the water continues," and (2) whether the water was subject to exchange.

In the instant case, in contrast, the appropriator from the stream makes only one use of it, that of irrigation, and after such use the return flow, as well as the waste water, returns to a stream. The waste water and return flow from the irrigation of Cedar Mesa became a part of the Coryell Gulch flow and subject to appropriation from that gulch. Such being the case, the Cedar Mesa irrigators had no right to the Coryell Gulch waters supplied by Cedar Mesa waste water and return flow; and the atempted transfers by the "relinquishments" were without effect. *Clark v. Ashley,* 34 Colo. 285, 82 P. 588 (1905). *See Boulder v. Boulder and Left Hand Ditch Co.,* 192 Colo. 219, 557 P.2d 1182 (1976); and *Durkee Co. v. Means,* 63 Colo. 6, 164 P. 503 (1917).

We wish to mention another distinction in *Fulton, supra,* involving transmountain diverted water. Here, Surface Creek and Currant Creek are in close proximity to each other. Their confluences with the Gunnison River are only about four miles apart. As illustrated by the Cedar Mesa irrigation, surface flow could be transported by gravity over a relatively short distance from Surface Creek to Coryell Gulch, the tributary of Currant Creek. We need not, and do not, express an opinion as to the rights of a municipality where there is, as appellants characterize it, a "transbasin" diversion with uses such as Denver employed in *Fulton.* We merely point out that there is a vast distinction between a transmountain diversion as was involved in *Fulton* and a so-called transbasin diversion of irrigation water as here.

Judgment affirmed.