**SL GROUP, LLC, Appellant,**

v.

**GO WEST INDUSTRIES, INC., Appellee,**

and

**WAYNE SCHIELDT, Division Engineer, Appellee Pursuant To C.A.R. 1(e).**

No. 00SA398.

Supreme Court of Colorado, En Banc.

March 11, 2002.

**638**

Dufford, Waldeck, Milburn & Krohn, L.L.P., Nathan A. Keever, John R. Pierce, Grand Junction, Colorado, Attorneys for Appellant.

Patrick, Miller and Kropf, P.C., Kevin L. Patrick, Sara M. Dunn, Aspen, Colorado, Attorneys for Go West Industries, Inc.

No appearance by or on behalf of Appellee Wayne Schieldt, Division Engineer.

Justice COATS delivered the Opinion of the Court.

SL Group, LLC, appealed directly to this court from an order of the water court in Division No. 4 dismissing SL's verified petition to correct substantive errors in a judgment and decree adjudicating water rights in favor of Go West Industries, Inc. The water judge dismissed the petition without reconsidering the merits of its earlier adjudication on the grounds that SL's allegations were insufficient to demonstrate that its failure to protest the application at the appropriate time was due to mistake, inadvertence, or excusable neglect. Under the circumstances of this case, including that SL's petition alleged that it was unaware of the published resume of the application and further alleged facts sufficient to demonstrate that it was entitled to identification in Go West's application to the water court and a mailed copy of the resume from the clerk, the water court abused its discretion in summarily dismissing the petition for reconsideration for failure to show excusable neglect. The water court's order is therefore reversed.

## I.

This water dispute originates in a remote desert area about a one-hour drive outside of Nucla, Colorado where the appellant, SL Group, and the appellee, Go West Industries, own adjoining properties. Prior to 1985, both properties comprised an undivided parcel owned by Philip and Francis Lawhead. The Lawheads and their predecessors in title irrigated portions of their property from the Meadows Ditch and two extensions. In March 1998, Go West filed an application for surface water rights to the Meadows Ditch Extension to West Shavano Creek (West Shavano Extension), seeking a decree based upon historic appropriation for irrigation beginning July 1, 1938.

The Go West application identified the United States Forest Service as the owner of the land upon which the point of diversion was located and identified itself as the owner of the land on which the referenced stock pond was located, but it did not make reference to SL Group in any way. Pursuant to section 37–92–302(3)(c)(I), 10 C.R.S. (1998), the water clerk in Division No. 4 prepared and published a resume of the application in a local newspaper and mailed a copy of the resume to Go West and the Forest Service. No statements of opposition were filed. After an on-site inspection of the property, the referee entered a ruling on January 29, 1999 granting an absolute water right to Go West for stockwater and irrigation from the West Shavano Extension with an appropriation date of July 1, 1938 and an adjudication date of 1998. No protest having been filed, the water court approved the ruling on February 22, 1999.

On September 5, 2000, approximately a year and a half later, adjoining land owner SL Group filed a Verified Petition for Reconsideration, seeking to have the court correct substantive errors in Go West's decree. *See* § 37–92–304(10), 10 C.R.S. (2001). Claiming to be a party entitled to receive mailed notice of the action according to section 37–92–302(3)(c)(I), and not to have otherwise been aware of the application, SL Group alleged that its failure to protest was due to "mistake, inadvertence, or excusable neglect."

More specifically, SL's motion alleged that between 1985 and 1991, in a series of transactions, the Lawheads transferred the irrigated portion of their property to the Nelsons, along with the associated water rights. That parcel, the western portion of the property, allegedly contained the only irrigated acreage within the original Lawhead property. In July 1996, the Nelsons transferred their property and water rights to SL Group. In that same year, the Lawheads transferred to Go West their remaining property, the eastern portion, consisting mainly of non-irrigated grazing land, located up-slope from the water delivery system.

According to the petition, the purchase of the SL Group property included the Lawhead's water rights that originally had a 1938 priority to the West Shavano Extension. These water rights, however, had been placed on the 1984 abandonment list. Although the Lawheads continued to use the West Shavano Extension for irrigation on what would become the SL Group property, they failed to object to its inclusion on the abandonment list, and the West Shavano Extension was decreed abandoned in 1989.

In Go West's 1998 application, the legal description of the historically irrigated acreage included the entire former Lawhead property—an area encompassing both the Go West and SL Group parcels. According to SL Group's verified petition, the Go West property had never been irrigated, and Go West did not list SL Group as an "owner of land on which points of diversion or places of use are located," as required by the application form. The petition also alleged that the stock pond represented in the application as being located on Go West property is actually located on SL's property. The affidavit of a former ranch hand of the Lawheads, which was attached as support for Go West's application and which affirmed that he had continuously irrigated the Lawhead fields from 1972 through 1989 in spite of the abandonment decree, in fact described the entire original Lawhead parcel, making no distinction between the Go West and the SL Group properties. In an affidavit accompanying SL's petition for reconsideration, the water commissioner who performed the field inspection indicated that SL's petition correctly set forth the location of the land irrigated by the West Shavano Extension and that it was his understanding at the time of the field inspection that Go West was the sole landowner in the area.

Some time after the ruling was approved by the water court, SL Group discovered that its use of the water had been compromised by the Go West adjudication and filed its petition for reconsideration. In Go West's responsive pleadings, it denied a number of SL's assertions, including the fact that the water at issue had historically been used exclusively on property now owned by SL. It also attached correspondence between SL Group and Go West evidencing a dispute over the use of water from the West Shavano

irrigation ditch, only weeks before Go West's application. Go West opposed SL's petition for reconsideration, arguing that SL had not shown excusable neglect and that SL was not a party whose rights had been adversely affected by the adjudication because the Lawhead's former decree had been ruled abandoned. Without a hearing, the water court dismissed SL's petition by minute order, concluding that publication had been proper and that there had been no showing of mistake, inadvertence, or excusable neglect as required by section 37–92–304(10). SL Group appealed that order directly to this court.[1]

## II.

■ It is well-established that water rights vest upon a completed appropriation and application of water to beneficial use, *see Shirola v. Turkey Cañon Ranch L.L.C.,* 937 P.2d 739, 744 (Colo.1997), and the General Assembly long ago established a system for settling the conflicting priorities to water rights through a process of adjudication and decree. *South Adams County Water & Sanitation Dist. v. Broe Land Co.,* 812 P.2d 1161, 1163 (Colo.1991) (referencing §§ 1762–1801, C.G.S. (1883)). A water rights adjudication is a judicial proceeding at which respective priorities of water rights are ascertained, and a decree confirms a preexisting water right. *Shirola,* 937 P.2d at 748. In adopting the Water Right Determination and Administration Act of 1969, title 37, article 92, 10 C.R.S. (2001), the General Assembly expressly recognized the need to protect those who hold vested water rights and required that such rights be preserved under our current water system. *State Eng'r v. Castle Meadows, Inc.,* 856 P.2d 496, 505 (Colo.1993).

■ The Act provides state officials with a means by which to administer competing water rights; absent an adjudication under the Act, water rights are generally incapable of being enforced. *Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1156 (Colo.2002); *Shirola,* 937 P.2d at 748–49. The priority dates afforded to water rights by operation of the statute establish their relative seniority for purposes of administration within the system. *Id.* at 749. Specifically, section 37–92–306 provides that all water rights adjudicated in a previous decree are senior to water rights adjudicated in a subsequent decree on the same stream, regardless of their dates of appropriation, and the date of appropriation awarded for rights decreed in any particular year establishes the relative priority among other rights awarded on applications filed in the same calendar year. The priority of the decree is therefore much more dependent upon the date of the decree than upon the date of appropriation. *Shirola,* 937 P.2d at 749.

■ In order to bind a party with a valid judgment, a court must have jurisdiction over both the subject matter of the case and that particular party. *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.,* 734 P.2d 627, 632 (Colo. 1987). It is an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality that all interested parties be given notice reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Id.; Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. 652.

■ Notice of proceedings to determine water rights is now provided through the special statutory procedure set forth in section 37–92–302(3). *Williams v. Midway Ranches Property Owners' Ass'n, Inc.,* 938 P.2d 515, 524–25 (Colo.1997); *Monaghan Farms, Inc. v. City & County of Denver,* 807 P.2d 9, 15 (Colo.1991). In lieu of personal service, the statute's resume-notice procedure is designed to put all interested parties of pending water rights proceedings, to the extent reasonably possible, on inquiry notice of the nature, scope, and impact of a proposed decree by requiring the preparation of

---

1. The court of appeals lacks initial jurisdiction over final judgments in water cases involving priorities or adjudications. § 13–4–102, 5 C.R.S. (2001).

a monthly resume of applications from pertinent information provided by the applicants, which the water clerk must then publish in local newspapers of general circulation and mail to potentially affected parties.[2] *Id.; Closed Basin Landowners Ass'n,* 734 P.2d at 634. In aid of the clerk's mailing obligation, every application is required to state the name and address of the owner or reputed owner of the land upon which any structure is or will be located, upon which water is or will be stored, or upon which water is or will be placed to beneficial use. *See* Rule 3(3), Uniform Local Rules for all State Water Court Divisions.[3] Because the resume-notice procedure of the statute substitutes for personal service and provides the only mechanism to advise interested parties of the pendency of an application for water rights, there must be strict compliance with the requirements of the Act. *Closed Basin Landowners Ass'n,* 734 P.2d at 634.

The statutory scheme further protects the due process concern for notice by, in effect, tempering the finality of a water decree in limited circumstances involving nonparticipants whose rights are adversely affected. Even substantive (as distinguished from merely clerical) errors in a judgment and decree may be corrected by the water judge upon petition within three years by any person whose rights were adversely affected by the adjudication and who failed to file a protest through mistake, inadvertence, or excusable neglect. § 37–92–304(10), 10 C.R.S. (2001). The phrase "mistake, inadvertence, or excusable neglect" is not more specifically defined, but it is clearly an element of a statutory scheme designed, among other things, to increase the likelihood that parties actually affected by the adjudication will have a meaningful opportunity to be heard, despite the statute's abandonment of a requirement of personal service. *See Benson v. Burgess,* 192 Colo. 556, 560, 561 P.2d 11, 14

(Colo.1977) (where resume failed to provide adequate notice of applicant's position, which became apparent only upon action by the water official, appellant's failure to protest was due to mistake, inadvertence, or excusable neglect).

 Generally, a party's conduct is considered excusable when the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty. *Tyler v. Adams County Dep't of Soc. Servs.,* 697 P.2d 29, 32 (Colo.1985). The notion of excusable neglect has been characterized as an "elastic concept," requiring not only consideration of the reasons for a party's failure to act but also a balancing of the equities, including among other things the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, and the good faith of the movant. *People v. Wiedemer,* 852 P.2d 424, 442 n. 20 (Colo.1993). Most importantly, however, construing the term to have the meaning intended by the legislature requires consideration of the context in which it appears and the apparent purposes of the General Assembly in using it. *Id.* (construing term "justifiable excuse or excusable neglect" in light of its adoption to cure constitutional infirmity of statute of limitations on collateral attacks in criminal cases that did not permit a meaningful opportunity to challenge alleged unconstitutional convictions).

 In the adjudication proceeding at issue here, it is clear that Go West did not identify SL as the owner of property upon which water from the West Shavano Extension was being used or include any reference to SL in its application. It is also clear that the water clerk did not mail a copy of the resume to SL. In SL's petition for reconsideration pursuant to section 37–92–304(10), filed a year and a half after the final decree, SL alleged that it was unaware of the appli-

**2.** Section 37–92–302(3) requires that copies be mailed to everyone the referee has reason to believe would be affected as well as everyone who has requested a copy, and it further permits augmentation of publication by notices broadcast over radio and television.

**3.** After the filing of the application at issue in this case, the specific language of the rule was added

to section 37–92–302(3)(c)(I), making clear that the clerk's duty to "mail a copy of the resume to each person whom the referee has reason to believe would be affected" includes at a minimum the persons listed in the application in accordance with Rule 3(3). Ch. 114, sec. 2, § 37–92–302, 2001 Colo. Sess. Laws 306–07.

cation until a year after the decree. SL's petition further alleged not only that it and its predecessors continuously used water from the West Shavano Extension from long before the 1989 abandonment decree until the time of the petition, and that its historical irrigation practices had been adversely affected by the decree granted to Go West, but also that it owned the land upon which the historical use offered in support of Go West's 1938 priority actually took place.

Under these circumstances it is unnecessary to determine whether the due process requirement of reasonable notice was sufficiently satisfied to give the water court personal jurisdiction over SL, or to determine whether provisions other than section 37–92–304(10) would relieve SL from the operation of the water court's final judgment for any other reason. *See Danielson v. Jones,* 698 P.2d 240, 244 n. 5 (Colo.1985) (civil rules of procedure apply to Water Rights Act to the extent consistent with provisions of the Act); C.R.C.P. 60(b). It is enough for review of the water court's order dismissing the petition for reconsideration in this case that SL's failure to protest in a timely manner was due to mistake, inadvertence, or excusable neglect.

Under the circumstances of this case, the adjoining landowner's failure to otherwise become aware of the application and file a timely protest must be considered excusable within the meaning of section 37–92–304(10). The water court therefore abused its discretion in summarily dismissing SL's petition for reconsideration for failing to show mistake, inadvertence, or excusable neglect. Furthermore, the petition sufficiently alleged that SL's rights had been adversely affected by substantive errors in the judgment and decree. *See* § 37–92–304(10).

### III.

Because the water court abused its discretion in dismissing SL's petition for reconsideration, its order is reversed, and the case is remanded for further proceedings consistent with this opinion.