**TRAIL'S END RANCH, L.L.C.,**
**Plaintiff–Appellant,**

v.

**COLORADO DIVISION OF WATER RE-SOURCES; Hal D. Simpson, acting as the Colorado State Engineer; and Steven J. Witte, as the Division Engineer for Water Division 2, Defendants–Appellees.**

No. 03SA199.

Supreme Court of Colorado,
En Banc.

June 14, 2004.

White & Jankowski, LLP, David F. Jankowski, William A. Hillhouse, II, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Ken Salazar, Attorney General, Alexandra L. Davis, Assistant Attorney General, Appellate Division, Natural Resources & Environment Section, Denver, Colorado, Attorneys for Defendants–Appellees.

John M. Dingess, Austin Hamre, Denver, Colorado, Attorneys for Amicus Curiae City

of Aurora, acting by and through its Utility Enterprise.

Burns, Figa & Will, P.C., Lee Miller, Stephen Leonhardt, Scott Clark, Englewood, Colorado, Attorneys for Amicus Curiae Southeastern Colorado Water Conservancy District.

Trout, Witwer & Freeman, P.C., Peter Nichols, Denver, Colorado, Attorney for Amicus Curiae Lower Arkansas Valley Water Conservancy.

Justice COATS delivered the Opinion of the Court.

Trail's End Ranch appealed directly to this court from a judgment of the water court denying the declaratory and injunctive relief it sought against the Colorado Division of Water Resources. The division engineer had ordered Trail's End to stop taking water out of Spruce Creek at locations other than the points of diversion decreed to its direct flow irrigation rights, until those additional locations were approved by the water court. Trail's End filed in the water court to enjoin enforcement of the order, asserting that having once diverted water at its decreed points of diversion and having returned it directly to the stream, Trail's End was then entitled to recapture the returned water further downstream, without adjudicating a change of its water right.

Because the practice proposed by Trail's End would amount to changing or adding new or supplemental points of diversion, it could not benefit from the priorities of its existing water rights without adjudicating changes to those rights. The judgment of the water court is therefore affirmed.

## I.

This dispute arises from an attempt by Trail's End Ranch, LLC, to operate its direct flow irrigation rights, without adjudicating a change in those rights, from points downstream of its decreed points of diversion on the same natural stream. The Division Engineer for Water Division No. 2 issued orders requiring Trail's End to cease diversions at these downstream points and rejected Trail's End's proposal for operating its rights from these downstream points in the future. After the state engineer agreed, Trail's End filed an action in the water court to declare its entitlement to its proposed operations and to enjoin enforcement of the order. On the basis of a negotiated stipulation of facts, the parties contemporaneously filed motions for summary judgment.

According to the stipulation, water rights owned by Trail's End include three rights originally adjudicated in the nineteenth century at separate ditches on a natural stream called Spruce Creek, for the irrigation of lands along the creek in Custer County. Although the parties disputed the length of time the practice had continued, they agreed that Trail's End had been diverting water not only at its decreed headgates on all three ditches but also at points several thousand feet downstream of each decreed headgate.

After the division engineer ordered Trail's End to cease diversions at the downstream points, Trail's End complied but proposed to permanently operate these three water rights by: 1) diverting and measuring all water to which it was entitled at its respective decreed points of diversion; 2) measuring and returning all or part of the diverted water to Spruce Creek; 3) conveying the returned water through Spruce Creek to the downstream point associated with each respective water right; and 4) recapturing the water (subject to reasonable losses incurred in transporting the returned water through Spruce Creek) for irrigation under the respective water rights. Despite the fact that all of the referenced points on the stream and all intervening stream reaches were located on Trail's End's property, and that there were no intervening water users between the decreed headgates and proposed downstream points, the engineer found the proposal objectionable in the absence of a change of water rights.

The water court held that Trail's End was proposing to change its points of diversion and that the conditions of its proposed conveyance of water to the "recapture" points downstream did not exempt it from applying for a change of water right in the manner prescribed by statute. It therefore granted the division's motion for summary judgment

and denied the motion filed by Trail's End. Trail's End appealed the ruling directly to this court.[1]

## II.

■ Rights to the waters of the natural surface streams of this state are acquired by appropriating previously unappropriated water and putting it to beneficial use. *State Eng'r v. Bradley (In re Application of Water Rights in Rio Grande County)*, 53 P.3d 1165, 1168 (Colo.2002); *Williams v. Midway Ranches Property Owners Ass'n, Inc. (In re Application for Water Rights of Midway Ranches Property Owners' Ass'n, Inc. in El Paso and Pueblo Counties)*, 938 P.2d 515, 521 (Colo.1997); *Shirola v. Turkey Canon Ranch, L.L.C. (In re Application for Water Rights of Turkey Canon Ranch L.L.C. in El Paso County)*, 937 P.2d 739, 748 (Colo.1997); *see* § 37–82–101, 10 C.R.S. (2003). The legislature long ago established a system for settling conflicting priorities to water rights through a process of adjudication and decree. *SL Group, LLC v. Go West Indus., Inc.*, 42 P.3d 637, 640 (Colo.2002); *South Adams County Water & Sanitation Dist. v. Broe Land Co.*, 812 P.2d 1161, 1163 (Colo.1991). Absent such an adjudication, water rights are generally incapable of being enforced. *Shirola*, 937 P.2d at 749 (Colo.1997).

■ A water right adjudication is a judicial proceeding at which the respective priorities of water rights are ascertained. *Bradley*, 53 P.3d at 1168; *Shirola*, 937 P.2d at 748. An absolute decree confirms that an appropriation has vested as a property right and entitles the subsequent operation of that right through a decreed point of diversion, in a specified amount, for a particular beneficial use. *Bradley*, 53 P.3d at 1168; *Williams*, 938 P.2d at 521. Although one of the inci-

dents of a water right is the right to change the point of diversion (to the extent that it neither enlarges the right nor injuriously affects other users), such a change constitutes a change of the water right itself. *Bradley*, 53 P.3d at 1168–69; *see* § 37–92–103(5).[2] It must therefore be applied for and adjudicated in substantially the same manner as the initial determination of the water right. *See* § 37–92–302; *Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1158 (Colo.2001)(applications are mandatory, not discretionary).

■ Within the scheme of the Act, the term "diversion" has a specific meaning, which includes removing water from its natural course or location by means of a ditch, canal, flume, reservoir, bypass, pipeline, conduit, well, pump, or other structure or device. *See* § 37–92–103(7). While the term "natural course" is not further defined in the statute, its plain and ordinary meaning, when applied to water, clearly refers to the path along which the water flows in nature as distinguished from its path under artificially induced conditions. *See* Webster's Third New International Dictionary, 522 (1976) (course: "the path over which something moves"); Black's Law Dictionary, 1048 (7th ed.1999) (natural: "brought about by nature as opposed to artificial means"). Furthermore, a "natural stream" is statutorily defined, in connection with the displacement of water for storage in reservoirs, as "a place on the surface of the earth where water naturally flows regularly or intermittently with a perceptible current between observable banks, although the location of such banks may vary under different conditions." *See* § 37–87–102(1)(b).

---

1. The supreme court has initial appellate jurisdiction in water cases involving priorities and adjudications. *See* § 13–4–102(1)(d), 5 C.R.S. (2003).

2. "Change of water right" means:
   a change in the type, place, or time of use, a change in the point of diversion, a change from a fixed point of diversion to alternate or supplemental points of diversion, a change from alternate or supplemental points of diversion to a fixed point of diversion, a change in the

means of diversion, a change in the place of storage, a change from direct application to storage and subsequent application, a change from storage and subsequent application to direct application, a change from a fixed place of storage to alternate places of storage, a change from alternate places of storage to a fixed place of storage, or any combination of such changes. The term "change of water right" includes changes of conditional water rights as well as changes of water rights.

Without specifying the precise limits of the term "natural course," in every conceivable circumstance, it is enough that the course of a natural stream, through which water would regularly flow in the absence of redirection, is unambiguously its "natural course." It is equally clear that diverting water from a natural stream at a point other than one decreed to an existing water right, at least in the absence of a specific statutory exception, constitutes an out-of-priority diversion, justifying an order to cease further diversion, for the protection of existing adjudicated rights. See § 37–92–502; cf. San Luis Valley Irrigation Dist. v. Carr, 79 Colo. 340, 245 P. 705, 706 (1926) (describing the duty of the water commission to distribute water at the point of diversion from the stream, decreed in an original adjudication, in the absence of a court order directing otherwise).

## III.

In light of the stipulation of facts and the arguments advanced throughout by Trail's End, there can be no dispute that it proposed to divert water from Spruce Creek at its decreed points of diversion and, before applying that water to a beneficial use or placing it into a decreed place of storage, return it by ditches to Spruce Creek, for subsequent removal further downstream. The proposal would not add to the creek any water that was not already there and would clearly have no effect on the natural course of the creek. The water subject to downstream removal would therefore continue to flow along the existing course of Spruce Creek at the undecreed points proposed for its removal, whether or not it were briefly detoured at an upstream location by Trail's End. Under these circumstances, the proposed downstream takings constitute diversions within the contemplation of the statute and cannot benefit from the priorities of existing water rights without a change of those rights.

**3.** Section 37–84–113 states in pertinent part:

The owners of any irrigation ditch, canal, or reservoir, transferring water from one natural stream to another, or from a reservoir, ditch, or flume to a stream in order that said water may be diverted from such stream for irrigation or any other purpose, shall construct suit-

Contrary to Trail's End's understanding, the statutory scheme in no way provides an exception for the practices proposed by Trail's End, and this court has not suggested otherwise. While the actual language of section 37–84–113 [3] implicitly acknowledges that a natural stream may be used as a conduit, perhaps even for water transferred from sources other than another natural stream or a reservoir, the statute merely mandates the measurement, in accordance with the dictates of the state engineer, of any "water turned into, carried through, and diverted out of" such a natural stream. It implies nothing about relief from legal obligations to adjudicate a change of water right that are imposed elsewhere by the Act.

Whatever impact separate statutory provisions concerning the administration of imported or stored water may have on the use of such water, see, e.g. § 37–83–101 (Transfer from one stream to another); § 37–82–106 (Right to reuse of imported water); § 37–87–102 ( [N]atural streams and use thereof by reservoir owners), they clearly have no bearing on the taking of water from, and immediate return of it to, a natural surface stream, as proposed by Trail's End. By stipulation, the proposal of Trail's End does not involve the transfer of water from one stream to another. Similarly, the subject water does not qualify as stored or developed water. See § 37–92–103(10.7) (" 'Storage' or 'store' means the impoundment, possession, and control of water by means of a dam."); City and County of Denver v. Fulton Irrigating Ditch Co., 179 Colo. 47, 52–53 506 P.2d 144, 147 (1972) (treating as "developed" that water which has been added to the supply of a natural stream and which never would have come into the stream but for its development). Nor does Trail's End even contend that its proposal amounts to the storage of water or that it would obligate Trail's End to comply with statutory requirements governing storage and the release of stored water.

able and proper measuring flumes or weirs, equipped with self-registering devices if required by the state engineer, for the proper and accurate determination of the amount and flow of water turned into, carried through, and diverted out of said natural stream....

*See, e.g.,* § 37–87–103 (Notice of release of stored waters).

To the extent, therefore, that prior holdings of this court involving the use of natural streams to convey foreign, developed, or stored water can be read to address limitations on removing that water at all, they have no applicability to the proposal of Trail's End.[4] *See, e.g., Bd. of County Comm'rs v. Park County Sportsmen's Ranch, L.L.P.,* 45 P.3d 693, 714 (Colo.2002) (referencing *Bd. of County Comm'rs v. Upper Gunnison River Water Conservancy Dist.,* 838 P.2d 840 (Colo. 1992), (regarding the rights of appropriators of storage water)); *Pub. Serv. Co. of Colorado v. Willows Water Dist.,* 856 P.2d 829 (Colo.1993) (developed nontributary groundwater); *Coffin v. Left Hand Ditch Co.,* 6 Colo. 443 (1882) (developed water); *Oppenlander v. Left Hand Ditch Co.,* 18 Colo. 142, 31 P. 854 (1892) (developed water).

Far from a mere formality, the adjudication of changes to the point of diversion of an existing water right provides an important protection for potentially affected decreed water rights holders. *See Empire Lodge Homeowners' Ass'n,* 39 P.3d at 1158. Even when it seems clear that no other rights could be affected solely by a particular change in the location of diversion, it is essential that the change also not enlarge an existing right. Because an absolute decree is itself not an adjudication of actual historic use but is implicitly further limited to actual historic use, in order to insure that a change of water right does not enlarge an existing appropriation, its "historic beneficial consumptive use," *see Empire Lodge Homeowners' Ass'n,* 39 P.3d at 1147, must be quantified and established before a change can be approved. *See Bradley,* 53 P.3d at 1168. There is no apparent purpose, other than circumventing the statutory requirement to adjudicate a change of water right, to be served by Trail's End's proposed rerouting operations, and none has been offered by Trail's End.

---

4. In addition to having been decided by the court of appeals, long before the current statutory scheme, *Sorenson v. Norell,* 24 Colo.App. 470, 135 P. 119 (1913), also relied upon by Trail's End, does not even appear to have involved water taken from the same stream, *see id.* at 470,

## IV.

Because the practices proposed by Trail's End would constitute diversions within the meaning of the Water Right Determination and Administration Act of 1969, it cannot benefit from the priorities of its existing water rights without adjudicating changes to those rights in the manner prescribed by the Act. The judgment of the water court is therefore affirmed.

135 P. at 120, and *Pub. Serv. Co. of Colorado v. Federal Energy Regulatory Comm'n,* 754 F.2d 1555 (10th Cir.1985), in which *Sorenson* is referenced by the 10th Circuit Court of Appeals, clearly refers to stored water.